In re Petition of Northfield Iron Company: Northfield Iron Company, Petitioner, vs. Murphy, Circuit Judge, and another, Respondents.

*December 7, 1937—January 11, 1938.*

*Giles V. Megan* of Oconto, for the petitioner.
*Tom Donoghue* of Oconto, for the respondents.

WICKHEM, J.   In its petition to this court to take original jurisdiction for the purpose of issuing a writ of prohibition, the petitioner alleges that it is a foreign corporation

engaged in the manufacture of steel bridges; that it is not licensed to do business in Wisconsin, and that it operates on a purely interstate basis in this state; that petitioner contracted for and sold one of its bridges to the town of Oconto, Wisconsin, and was paid the full purchase price therefor in the sum of $6,100; that thereafter an action was commenced in the circuit court for Oconto county by one William Murphy as taxpayer in his own right and on behalf of all other taxpayers against petitioner, the town of Oconto, its officers, and others, wherein it was sought to set aside the contract between petitioner and the town of Oconto for the reason that the procedure prescribed by statute was not followed in making this contract. Plaintiff by this action sought to enforce the return of the $6,100 paid for the bridge. It is further alleged that service was had against petitioner by serving a summons on its salesman, one Carl Crozier, who resides in the town of Oconto; that thereafter petitioner appeared specially and moved to set aside the service for the reason that the said Crozier at the time he was served did not have charge of and was not conducting any business for the petitioner in the state of Wisconsin; that there was filed in support of this motion an affidavit by Crozier showing the character of his dealings with petitioner; that there was filed a counteraffidavit by plaintiff William Murphy. Copies of these affidavits are attached to the petition and made a part of it. It is alleged that there was a hearing upon the motion on October 30, 1937, and that the court made an order denying the motion of petitioner and holding the service valid and good. A copy of this order is attached to the petition. Petitioner further states that it has no property, offices, or place of business in the state of Wisconsin; that on or about February 28, 1937, it entered into a salesman's contract with Crozier whereby the latter was to solicit orders for the products of petitioner and forward the same to peti-

tioner's principal place of business in Minnesota, and if such orders were accepted, Crozier was to receive a commission therefor; that Crozier's sole authority consisted of soliciting orders, and his only pay was the commission on completed sales; that he had no authority to make adjustments or settlements on behalf of petitioner, or to make contracts, indorse papers, collect money, or do any other acts on behalf of petitioner; that he paid all of his own expenses, and that he was not directed or controlled by petitioner as to any of the details of his work of solicitation; that from the time of the execution of his contract until the date of the attempted service upon him, Crozier made only two sales for the company. The return of AROLD F. MURPHY, judge of the circuit court for Oconto county, alleges that upon a full and fair consideration of the affidavits, the court found that Crozier lived in the state of Wisconsin; that he was soliciting orders for the petitioner in the state of Wisconsin; that he acted as the general agent of the defendant corporation, and attempted to adjust and did adjust certain differences with the officers of the town of Oconto as a representative of petitioner; that he appeared at town meetings at said town and held conferences with attorneys for petitioner and for the town of Oconto; that the petitioner, through Crozier, its agent, has been doing a continuous course of business in the solicitation of orders for petitioner; that this course of business was not a single transaction and that said agent had full control of all transactions in the settlement and adjustment of the lawsuit pending between the Northfield Iron Company and the town of Oconto; that the question involved on the motion to set aside the service was ruled by the decision of this court in *Tetley, Sletten & Dahl v. Rock Falls Mfg. Co.* 176 Wis. 400, 187 N. W. 204.

There was a question of fact in this case whether and to what extent Crozier took part in negotiating a settlement be-

tween petitioner and the town of Oconto, but we are of the view that this question, however decided, has no legal significance, and that we are in a position to decide as a matter of law the issues involved in the pleadings.

At the outset, it is necessary to keep clearly separate two aspects of the question. In *Fond du Lac C. & B. Co. v. Henningsen P. Co.* 141 Wis. 70, 72, 123 N. W. 640, this court, through Mr. Justice DODGE, said:

"It is of course true that the courts of this state cannot acquire jurisdiction over persons not present in the state, except for the purpose of adjudicating with reference to property or status here located. This is an inherent limitation upon the power and jurisdiction of the state under our form of government, and cannot be escaped by reason of local statutes declaring such power."

The foregoing points out limitations upon the power of the state to authorize service on foreign corporations by service upon their officers or agents. In this field the court is bound by what has been said upon the subject by the supreme court of the United States.

The other aspect of the question requires a construction of that portion of sec. 262.09, Stats., which reads:

". . . The summons and the accompanying complaint or notice aforesaid shall be served, and such service held of the same effect as personal service on a natural person, by delivering a copy thereof as follows: . . .

"(13) If against any other foreign corporation, . . . to any agent having charge of or conducting any business therefor in this state. . . . But such service can be made upon a foreign corporation only either when it has property within the state or the cause of action arose therein, or the cause of action exists in favor of a resident of the state. . . ."

With reference to the first aspect of the question, a consideration of the case of *International Harvester Co. v. Kentucky,* 234 U. S. 579, 34 Sup. Ct. 944, leads to the conclu-

sion that a state statute authorizing service upon the soliciting agent of a foreign corporation is valid and binding, even though the agent merely takes and transmits orders to the corporation which accepts and fills the orders without the state by the instrumentalities of interstate commerce. In that case the United States supreme court said (pp. 588, 589) :

"True, it has been held time and again that a state cannot burden interstate commerce or pass laws which amount to the regulation of such commerce; but this is a long way from holding that the ordinary process of the courts may not reach corporations carrying on business within the state which is wholly of an interstate commerce character. Such corporations are within the state, receiving the protection of its laws, and may, and often do, have large properties located within the state. . . .

"We are satisfied that the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state, although the business transacted may be entirely interstate in character. In other words, this fact alone does not render the corporation immune from the ordinary process of the courts of the state."

Weight was apparently given to two factors which will later be discussed in more detail: (1) There had been a continuous course of business in the solicitation of orders, and (2) the soliciting agents were authorized to and did accept payments for goods sold and transmit these to the company. It is our conclusion that so far as the question of state power is concerned, the *International Harvester Co. Case, supra,* must be taken to make valid a statute by a state providing for service upon the soliciting agent of a foreign corporation whose only activity aside from a solicitation of orders within the state is the filling of these orders through the instrumentality of interstate commerce.

The next question relates to the proper construction of sec. 262.09, Stats. Under this section was Crozier an agent

"having charge of or conducting any business" for petitioner in Wisconsin? Do the facts, (1) that he was expressly limited in authority to taking orders and transmitting them to petitioner in Minnesota for approval and execution; (2) that he had the right to control the details of his work; (3) that he had no authority to compromise claims or negotiate settlements; and (4) that his sole compensation was his commissions, make him something other than an agent conducting business in this state for a foreign corporation? In connection with this question, it is convenient first to consider the case of *Tetley, Sletten & Dahl v. Rock Falls Mfg. Co., supra,* which was regarded by the trial court as decisive. In that case the plaintiff, a Wisconsin corporation, sued defendant, a foreign corporation, for the recovery of the part purchase price of a hearse manufactured by defendant. At the time the contract for the purchase of the hearse was entered into, one A. W. Hanson, residing in Wisconsin, was acting as a soliciting agent of the defendant to procure orders on a commission basis. The practice was to have the purchaser and defendant, by its local agent, sign the sales contract, which was then transmitted to defendant's office in Illinois for approval, the hearse to be shipped from Illinois in interstate commerce. Beneath the signatures of the parties a provision was added for an allowance of $21.50 to the plaintiff to cover expenses in inspecting a certain hearse at Beloit, Wisconsin. When the contract was signed, plaintiff delivered to the agent a check for $556, payable to defendant, which check the agent indorsed, cashed, and transmitted the proceeds to defendant. The action was based on misrepresentations alleged to have been made by the agent at the time of sale. Defendant appeared specially and moved to set aside the service upon the ground that Hanson did not have charge of or conduct any business for it in the state at the time of the service. The court assumed to apply sec. 262.09 (13) (then numbered sec. 2637 (13) ). The court followed

the *International Harvester Co. Case* and held that under sec. 262.09 (13) jurisdiction may be acquired upon a foreign corporation, even though such corporation at the time in question is transacting purely interstate business through its agent. Weight is given to the fact that Hanson had been the agent for defendant for four years, that he was acting in such capacity at the time the process in question was served, and that there was a continuous course of business in the solicitation of orders in this state in response to which defendant's product was from time to time shipped into this state. The fact that the agent accepted plaintiff's check for $556, cashed it, and transmitted the proceeds, is treated as important, as well as the fact that an allowance was made in the original contract for expenses of inspection. It was held that the corporation was properly served by serving the agent.

The question common both to the *Harvester* and *Tetley Cases* is just how much significance was intended to be attached to the factors just mentioned. Were they essential to the result or merely make-weights? Here the sales contract with Crozier was dated February 28, 1937, and he was attempted to be served on September 28, 1937, at which time he had completed only two sales for the company, and petitioner contends that there had not been the time or opportunity to develop a course of business sufficient to bring the case within the *Harvester* and *Tetley Cases*. It seems likely that there is merit to petitioner's contention that the subsection implies a continuity of operation and not a single, isolated transaction. The term in the statute "having charge of or conducting any business" seems to connote something more extended than a single isolated sale. Such a conclusion seems to find support in holdings by the United States supreme court that an officer of a foreign corporation, present in the state where service is attempted for some isolated

transaction on behalf of the corporation, does not bring the corporation into the state so that service on it may be had by serving him. *Consolidated Textile Co. v. Gregory,* 289 U. S. 85, 53 Sup. Ct. 529; *James-Dickinson F. M. Co. v. Harry,* 273 U. S. 119, 47 Sup. Ct. 308; *Rosenberg Co. v. Curtis Brown Co.* 260 U. S. 516, 43 Sup. Ct. 170. It does not follow, however, where the agent's commission contract contemplates a continuous course of sales, that actual sales must be made over a considerable period of time before a valid service may be had upon the agent. The contract in question assigns specified territory to Crozier in consideration for his agreement thoroughly to canvass the territory for the period of one year (unless the contract be canceled before the end of this period). It contemplates a course of business of which Crozier is to be in charge, and the fact that the agent had operated under the contract for only a short period and had made only two sales will not support the conclusion that we are dealing with an isolated transaction. The absence of a power in Crozier to compromise claims or to negotiate for their settlement does not take the situation out of the doctrine of the *Harvester* or *Tetley Cases.* While the existence of such powers gives added force to the inference that their holder is conducting a business, it is not essential to this conclusion.

We do not consider that the foregoing conclusions are in conflict with those reached in the case of *State ex rel. J. A. Sexauer Mfg. Co. v. Grimm,* 217 Wis. 422, 259 N. W. 262. In that case a salesman in Wisconsin of a foreign corporation, who was given complete discretion as to the manner in which his territory was to be covered, used an automobile for purposes of his work. He paid all of his expenses, and his sole compensation was a commission upon goods sold in his territory. A collision occurred between the car driven by the salesman and another automobile, and it was alleged

by occupants of the other automobile that the salesman had been negligent. Service was had upon the salesman as a nonresident motorist, pursuant to sec. 85.05 (3), Stats., by filing copies of the summons and complaint in the office of the secretary of state. Like copies were so filed as and for service upon the foreign corporation. Sec. 85.05 (3) provides:

"The use and operation by a nonresident of a motor vehicle over the highways of Wisconsin shall be deemed an appointment by such nonresident of the secretary of state to be his true and lawful attorney upon whom may be served all legal processes in any action or proceeding against him, growing out of such use or operation resulting in damage or loss to person or property, and said use or operation shall be a signification of his agreement that any such process against him which is so served shall be of the same legal force and validity as if served on him personally. Service of such process shall be made by serving a copy upon the secretary of state or by filing such copy in his office, together with a fee of two dollars, and such service shall be sufficient service upon the said nonresident; provided, that notice of such service and a copy of the process are within ten days thereafter sent by mail by the plaintiff to the defendant, at his last known address, and that the plaintiff's affidavit of compliance herewith is appended to the summons. The fee of two dollars paid by the plaintiff to the secretary of state at the time of the service shall be taxed in his costs if he prevails in the suit. The secretary of state shall keep a record of all such processes which shall show the day and hour of service."

The corporation petitioned for a writ of prohibition, and it was held by this court that the writ should issue. It was the view of the court that so far as the operation of the car was concerned, the salesman was not acting as agent of the foreign corporation (p. 425).

". . . We hold that France was not an agent of the relator in respect to the operation of his automobile, but an

independent contractor, if he can be considered as a 'contractor' in any sense in that regard. The term 'independent contractor' is perhaps a misnomer as so applied. It would be more exact to say that no contractual relations whatever existed between France and the relator as to the operation of the automobile. Whether France was a 'contractor' or not, his operation of the automobile was entirely 'independent' of the relator, and, this being so, the relator is not responsible for his conduct in operating it."

In other words, the holding is not that the salesman might not be an agent in charge of the business of the foreign corporation in this state for some purposes, but that driving an automobile was without the scope of such agency, and that since it was sought to obtain service under the provisions of sec. 85.05 (3), Stats., on the ground that the salesman was operating the automobile as the agent of the relator, the service must fail when it appeared that he was not so operating the car, and that consequently the relator was not using or operating an automobile on the highway. The case is not in point because it involves a different statute, and because it was not based upon absence of all relations of agency, but upon the fact that the particular act which was of legal importance was beyond the scope of any agency that might exist.

For the foregoing reasons we conclude that the attempted service was valid, and that the circuit court acquired jurisdiction over the relator.

*By the Court.*—Petitioner's demurrer to the return of respondents is overruled, and a peremptory writ of prohibition is denied.