PRIME MANUFACTURING COMPANY, Respondent, vs. KELLY
and another, Appellants.*

*January 9—February 4, 1958.*

\* Motion for rehearing denied, with $25 costs, on April 8, 1958.

For the appellants there were briefs by *Quarles, Herriott & Clemons,* attorneys, and *Maxwell H. Herriott* and *Laurence C. Hammond, Jr.,* of counsel, all of Milwaukee, and oral argument by *Maxwell H. Herriott.*

For the respondent there was a brief by *Michael, Spohn, Best & Friedrich,* attorneys, and *Herman E. Friedrich* and *John K. MacIver* of counsel, all of Milwaukee, and oral argument by *Mr. Herman E. Friedrich* and *Mr. MacIver.*

MARTIN, C. J.    Plaintiff Prime Manufacturing Company is a Wisconsin corporation and it has for many years engaged in the business of selling to railroads sander equipment, solenoid valves, drain valves, and bell ringers which it purchased from Graham-White Manufacturing Company of Salem, Virginia, under an oral arrangement. For many years prior to March 15, 1957, D. Allcott Kelly was employed by plaintiff as "assistant to the president." Kelly was in charge of resale of railroad equipment purchased by plaintiff from the Graham-White Manufacturing Company.

Graham-White Sales Corporation was incorporated in Virginia in August, 1956. Kelly was president and a director of the Sales Corporation. By a lease dated August 20, 1956, Kelly and the Sales Corporation rented offices in the Colby-Abbott Building at 759 North Milwaukee street in Milwaukee. According to its terms the lease was to run from October 1, 1956, to September 30, 1959, with the option to renew for successive three-year periods. Subsequently, by agreement the commencement date of the lease was extended to October 15, 1956. Sometime after the first of the year the suite was occupied by personnel and a type-writer and some office furniture and crates were moved in. The president of the office building company testified at the hearing on June 21, 1957, that the furniture was still there up to a couple of days before the hearing and that the rent was being paid and the lease was in full force and effect as of the date he testified.

On February 1, 1957, the Wisconsin Telephone Company installed telephone service for Graham-White Sales Company in the leased premises and made two additional listings, one, if no answer call Woodruff 2–5356 (later corrected to Woodruff 2–2737), and the second, for D. Allcott Kelly. The business address listed was 759 North Milwaukee street. The Kelly residential listing was Woodruff 2–2737. On March 21st the telephone company placed Graham-White Sales Company in the classified list under "Railroad Supplies," and made the listing correction, if no answer call Woodruff 2–2737. On March 25th the listing of the Sales "Company" was changed to Graham-White Sales Corporation and another listing was added for Graham-White Manufacturing Company. At the hearing on this motion on June 21, 1957, the manager of the telephone company testified that the service was still in effect. The telephone company records showed five local calls made from these listings

(Broadway 6–9520 and 6–9521) in March, 1957; 75 such calls in April and 47 in May. Its records also showed numerous long-distance calls made and received and telegrams sent under these listings during March and April, 1957. On April 22, 1957, the Sales Corporation put in an answering service.

Exhibit F, an advertisement of the Graham-White Sales Corporation for railroad locomotive equipment, published on March 24, 1957, contains the following:

> "Address inquiries to:
> 759 North Milwaukee St.
> Milwaukee 2, Wisconsin
> Telephone
> Broadway 6–9520"

The statute involved is:

Sec. 262.09 (4) "If the defendant is a foreign corporation (including one created by or under any act of congress) and (a) is doing business in Wisconsin at the time of service, or (b) the cause of action against it arose out of the doing of business in Wisconsin, service may be made in accordance with the provisions of section 180.825 or by delivering within or without the state a copy of the summons to any officer, director, or managing agent of the corporation."

The question is whether at the time of the service of the summons in this action on D. Allcott Kelly, as president of the Graham-White Sales Corporation—May 24, 1957, or June 3, 1957,—the corporation was doing business in Wisconsin.

In the recent case of *Behling v. Wisconsin Hydro Electric Co.* (1957), 275 Wis. 569, 572, 573, 575, 83 N. W. (2d) 162, this court, stating that "Questions of jurisdiction acquired by the service of process on a foreign corporation depend upon whether or not there has been compliance with the

due-process provision of the federal constitution," regarded as controlling *International Shoe Co. v. Washington* (1945), 326 U. S. 310, 319, 66 Sup. Ct. 154, 90 L. Ed. 95, where it was said:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due-process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf., *Pennoyer v. Neff, supra; Minnesota Commercial Assn. v. Benn,* 261 U. S. 140.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

Since the decision in the *International Shoe Case* the test of "doing business" for purposes of jurisdiction over a foreign corporation has been substantially liberalized so that, as stated in 18 Fletcher, Cyc. Corp. (perm ed.), p. 389, sec. 8711:

". . . all that is required is that the foreign corporation have 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' Hence the old cases construing 'doing business' no longer can be considered completely authoritative."

The facts in this case do not warrant any suggestion of "unfair play."

In the *Behling Case, supra* (p. 576), this court applied the rule stated in an annotation in 146 A. L. R. 961, as follows:

" 'While it is a generally accepted proposition that the fact that an office is maintained in a state for the facilitation of the sales of a foreign corporation, at least in the sense of making it more convenient for its salesmen to solicit orders for outside goods, will not, of itself, make the corporation amenable to service of process, *very little more* is needed, according to the cases, to establish that the corporation is "doing business" within the state, for this purpose. (And some of the courts have indicated that an aggregate of activities, no one of which would in itself be sufficient to subject the corporation to state jurisdiction, may do so, particularly if the volume of corporate business in the state is continuous and substantial, principally upon the authority of *International Harvester Co. v. Kentucky.* . . .)' " (Emphasis supplied.)

See also discussion in 1956 Wisconsin Law Review, 522.

Appellants maintain that all business activities at the Milwaukee office ceased prior to May 15th.

Kelly is president of the Sales Corporation and he resides in Milwaukee. He leased offices in the Sales Corporation's name for a three-year period with option to renew. Office furniture and equipment were moved in. The space was occupied and used by him and by Stella Peplowski, who was his secretary and close associate while both were employed by the plaintiff. Two telephone lines and four business listings were maintained and used at this office by the Sales Corporation. There is no showing that it attempted to close the office or discontinue the telephone service; both the lease and the telephone service were in effect at the time of the hearing.

In 17 Fletcher, Cyc. Corp. (perm. ed.), p. 529, sec. 8487, it is noted that while a foreign corporation is not necessarily doing business in the state because it secures a lease of a building there,—

"Of course, the foreign corporation would be doing business in the state where it actually uses the leased premises in its regular corporate business, . . ."

The trial court was justified under the testimony produced at the hearing in finding that the offices were in use by the Sales Corporation. The fact that it did little business is of no concern. Under the decision in *Petition of Northfield Iron Co.* (1938), 226 Wis. 487, 277 N. W. 168, the test of "continuous activity" can be met by showing that a continuous course of business was contemplated, even though little activity had taken place. The Sales Corporation was ready to accept, and had equipped and manned itself so that it could accept, and act upon, any order or business which might come into the office.

So far as the installation of a telephone-answering service is concerned, the trial court correctly observed that the use of such a service is not indicative of an intention to abandon the office or the business, but is consistent with the continuation of the business. It is not denied that the advertisement, Exhibit F, was a publication "to the trade," as alleged in the affidavit of plaintiff's secretary; the advertisement directs that all inquiries be addressed to the Milwaukee office. There is no evidence of any publication to the trade advising that the Milwaukee office is closed and the inquiries should be addressed elsewhere. Kelly admits in one of his affidavits that he used the office and the telephone service in handling inquiries addressed there.

These activities constitute at least the "very little more" than the maintenance of an office for convenience in the solicitation of orders, required under the rule, and the trial court was warranted in holding that the Sales Corporation was amenable to service in Wisconsin on May 24 and June 3, 1957.

*By the Court.*—Order affirmed.