## McCARLEY v. FOSTER–MILBURN CO. et al.

Civ. No. 4223.

United States District Court
W. D. New York.

Oct. 19, 1950.

C. Ray Robinson, Merced, Cal., for plaintiff, Selby G. Smith, Buffalo, N. Y., of counsel.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., for defendants.

KNIGHT, Chief Judge.

This is a motion directing the defendants to Show Cause "why an order should not be made reopening the trial of plaintiff's motion to transfer this action from the Western District of New York to the Northern Division of the Southern District of California."

Earlier a motion was made by the plaintiff to transfer this suit as aforesaid. This was granted by the Court, 89 F.Supp. 643, was reversed on appeal, Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949, and subsequently, when a motion was made in the Appellate Court for a rehearing, the Court denied "without prejudice to any further proceedings in the District Court". Hence follows this present motion.

It appears from the plaintiff's moving papers that subsequent to the original motion to remove the cause, and subsequent to the decision of the Appellate Court, plaintiff discovered an individual named Obergfel whom it claims was a representative and agent of the defendant Westwood Pharmacal Corporation in the State of California and that, therefore the defendants were doing business in the State of California and service of process could be made in that state.

The defendant, Westwood Pharmacal Corporation, (hereinafter called "Westwood") is a subsidiary of defendant, Foster-Milburn Company. Each is a separate corporation, Westwood from time to time purchased certain products from Foster-Milburn for sale to the medical profession only. Such products included the so-called product "Westsal". In April, 1946, Obergfel Bros. entered into a contract with Westwood under which they were to sell "Westsal" to the medical profession. This was negotiated personally and executed by Dolph Obergfel. Shortly after the execution of the contract, Dolph Obergfel took over the interests of Obergfel Bros., and thereafter till the termination of the contract, that sole interest continued. Westwood had no arrangement with Obergfel other than that which was set out in the contract, and he was in no way interested in any other sales of its products. During the periods in question, Obergfel was selling the products of various other companies. Obergfel had the sole and exclusive contract to sell products advertised to physicians only.

This motion is based on four affidavits: two by plaintiff's attorneys; one by an investigator; one by Obergfel. The attorney's affidavits are largely hearsay statements, save reference to lack of any knowledge of Obergfel. The investigator's affidavit is to the effect he could not find who sold "Westsal". Obergfel's affidavit connects up with a previous one.

The Foster-Milburn Company is a large medicine manufacturing company, and during the continuance of the Westwood-Obergfel contract, sold its lay products throughout California, but it did not sell directly to the medical profession. In October, 1948, the Westwood-Obergfel contract was terminated, and after that time Obergfel made all remittances directly to Foster-Milburn Company. The sales of Foster-Milburn Company, however, were sold under invoices stating that "title to all merchandise passes to the purchaser at point of shipment", which point was Buffalo, New York.

The first question to be answered is whether Obergfel under the contract was an "agent" of Westwood and whether his transactions constituted "doing business" by the defendant Westwood in the State of California or whether Obergfel was merely "a factor".

These facts are established to the satisfaction of the Court:

The contract between Obergfel and Westwood, drawn up by Obergfel, and under which they operated, contained this clause: "It is understood and agreed by both parties that the distributor is an independent contractor."

Orders for the product "Westsal" were sent by Obergfel from California, the product shipped by Westwood and warehoused by Obergfel in California.

Obergfel solicited all orders, sold in his own name, incurred all expenses, made all collections and, after deducting his commissions, remitted the balance to Westwood. Westwood in no way contacted the purchasers.

Obergfel and Westwood continued their relationship under the contract until October or November, 1948, when Westwood notified Obergfel that the contract was terminated. This termination was acquiesced in by Obergfel and following that Obergfel purchased all of the product "Westsal" from defendant, Foster-Milburn Company, and paid for these purchases to Foster-Milburn Company. The purchases were paid for when ordered, and the invoices bore the notation "Title to all merchandise passes to the purchaser at point of shipment."

An attempt is made to show that Westwood was "doing business" or was "present" in California. Largely from the fact that Oclassen, an employee of Westwood, attended a convention of physicians in San Francisco in company with Obergfel and had something to do with the display of the product "Westsal" on exhibition there. The Court is asked to so hold. No sales were made there and none solicited. This employee was a Research Director for Westwood, and Obergfel called him "Manager of Research". The evidence does not sustain the claim that this employee had any right to exercise any authority over Obergfel. Obergfel testified that this employee did not represent to prospective pur-

chasers what the employee's position was and made no representation that Obergfel was an agent of Westwood.

In three separate suits recently brought in California by as many individuals on action against these defendants and involving alleged causes of action arising out of the sale of this product "Westsal", orders were granted quashing and setting aside service of the summonses. In one action service was made on Obergfel and in the two other actions service attempted to be made on the Secretary of State for California.

What constitutes "doing business" by a foreign corporation to sustain jurisdiction where sued has been considered by the courts in an almost innumerable number of times. Many citations of authorities have been submitted by the plaintiff. In most of these cases the question was not whether the employee was an "agent" but rather whether his acts as "agent" constituted "doing business" for his employer.

In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, cited by plaintiff, no question was raised as regards the authority of the salesmen. The question there was whether what the salesmen did constituted "doing business". The same is true of Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788; Bomze v. Nardis Sportswear, 2 Cir., 165 F. 2d 33; Clover Leaf Fr. Lines v. Pacific Coast Wholesalers Ass'n, 7 Cir., 166 F.2d 626; Bach v. Friden Calculating Mach. Co., 6 Cir., 167 F.2d 679. In Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, the question arose over the application of the doctrine of forum non conveniens. It had nothing to do with any question of "doing business" by a foreign corporation. In Koster v. Lumbermens Mutual Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067, a question similar to that in Gulf Oil Corp. v. Gilbert, supra, was considered.

It is believed that in all other federal authorities cited by the plaintiff a definie distinction in those from the one at bar is to be found.

Obergfel was a "factor" and not an "agent". "The term 'agent' is one of very wide application, and includes a great many classes of persons, to which distinctive appellations are given, as 'factors,' 'brokers,' 'attorneys,' 'cashiers of banks,' 'clerks,' 'consignees'". 16 Words and Phrases, Perm. Ed. p. 23 et seq.

While a "factor" is an "agent" in a sense, he occupies a position differing from that of other classes of so-called agents.

"A 'factor' is an agent, who in pursance of his usual trade or business, and for compensation, sells goods or merchandise consigned or intrusted to his possession for that purpose by or for the owner."

See 16 Words and Phrases, Perm.Ed. p. 23 et seq. Bouvier's Law Dictionary Vol. 2, p. 2687, and Vol. 1 (id.) 725, et seq.

"A factor is to be distinguished from a person occupying the position merely of an ordinary agent * * *." 35 C.J.S., Factors, § 1, p. 392. 16 Words and Phrases, p. 25.

"To constitute a consignee a factor it is essential that he have possession of the goods to be sold, that the goods are intrusted to him to sell, that he is engaged in the business of selling, and that he is to receive compensation for his services." Vol. 35 C.J.S., Factors, § 1, p. 393.

A factor is "An agent for the sale of goods in his possession or consigned to him." Bouvier's Law Dictionary, Third Revision, Vol. 1, p. 1176. See numerous cases cited.

"As a general rule, a foreign manufacturing firm selling its goods to a dealer in another state where the latter becomes vested with the title to the goods is not thereby doing business because the transaction is not one of agency but of purchase and sale." Fletcher CYC, Corporations, Vol. 18, § 8726.

An "independent contractor" is not an employee. 21 Words and Phrases, Perm. Ed. p. 11, et seq. Fletcher CYC, Corporations (Perm.Ed.) Vol. 17, Chap. 67, § 8410.

In many cases it has been held sales made by a "factor" or an independent contractor do not make the contractor amenable to service in the state in which the sales

were made. In re Columbus Buggy Co., 8 Cir., 143 F. 859, 74 C.C.A. 611; Butler Bros. Shoe Co. v. U. S. Rubber Co., 8 Cir., 156 F. 1.

 There is no evidence to show that Foster-Milburn Company was "doing business" in the State of California. It is found that Westwood was not "doing business" and not "present" in California. The motion is denied.

In view of this finding and the decision of the Circuit Court in the instant case, it is unnecessary to consider any other questions presented.