[Civ. No. 15267. First Dist., Div. Two. June 4, 1952.]

JOHN FIELDING, JR. et al., Petitioners, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; WESTWOOD PHARMACAL CORPORATION (a Corporation) et al., Real Parties in Interest.

Emmett R. Burns, Edward A. Friend and Hoberg & Finger for Petitioners.

Hagar, Crosby, Crosby & Vendt for Respondent and Real Parties in Interest.

NOURSE, P. J.—This is a petition for a writ of mandamus asking that an order of the superior court be set aside and that the court be required to take jurisdiction over two foreign corporations. The court has ordered that summons directed to the corporations and served on the Secretary of State be quashed. Apparently this was done on the basis that

the two defendants were not doing business in the state at any time prior to the proceedings.

Complaint was filed and an order was granted allowing service on the Secretary of State on April 15, 1950; a motion to quash was made on August 29, 1950, and granted on May 15, 1951; affidavits in support of the motion to quash were filed but were not considered timely filed and hence were not considered at all by the court in granting its order to quash; what was considered was a deposition of one individual defendant taken on April 10, 1950. In September, 1951, petitioner moved to augment the record to include the affidavits but this was denied in October, 1951. The complaint does not appear in the record, nor does it appear that any affidavits were used in granting the original order directing that service be made on the Secretary of State. The essential question presented is whether the foreign corporations were doing business in this state at the time service was ordered to be made on the Secretary of State.

A more acute problem is whether the writ is appropriate in view of the possible appealability of the order. The essence of the petition is to compel the court to take jurisdiction over the parties although it involves review of its order to quash. Under general principles mandamus is the proper remedy. (16 Cal.Jur. 824; *Miller* v. *Municipal Court,* 22 Cal.2d 818, 852 [142 P.2d 297]; *Katenkamp* v. *Superior Court,* 16 Cal.2d 696 [108 P.2d 1].) However if this petition is viewed as a review of the order to quash it seems that the remedy is by appeal. In this respect it should be noted that by amendment effective September 22, 1951 (Stats. 1951, ch. 234, § 1), section 963 Code of Civil Procedure now reads that an order quashing service is appealable. Such was not the case previously. Since the order was made in May, 1951, the amendment is not applicable here.

The cases are not in full accord. In some the remedy was by appeal, either with or without discussion of the propriety of such proceedings. (*Fuller* v. *Lindenbaum,* 29 Cal.App.2d 227 [84 P.2d 155]; *De Pier* v. *Maddox,* 87 Cal.App.2d 460 [197 P.2d 87]; *In re Melekov* (C.C.A. Cal.), 114 F.2d 727; *Narum* v. *Cheatham,* 127 Cal.App. 505 [15 P.2d 1106].) In at least one other case it was implied that the remedy is not by appeal in that the order was held to be reviewable under section 956 Code of Civil Procedure (matters reviewable after final judgment), and since no dismissal was here taken no appeal would lie. (*W. H. Marston Co.* v. *Kochritz,* 80 Cal.

App. 352 [251 P. 959].) It appears probable on a review of all these cases that appeal will lie from such an order as this. ▇ But it must also be said that the remedy is not clear cut. Thus, the appellate court should not deny petitioners a remedy even though it determines that the proper remedy was other than what petitioners deemed it to be. (*Robinson v. Superior Court*, 35 Cal.2d 379, 383 [218 P.2d 10].)

The merits of the case involve the following facts: The two corporate defendants (considered as one for purposes of this proceeding) are affiliated in the business of manufacturing and distributing pharmaceutical goods. They are organized and have their principal places of business in Buffalo, New York. Apparently plaintiff, petitioner, was injured by some of these goods after purchase at retail, although the complaint is not set forth nor any facts that could serve as the basis for a complaint. The manner of distribution of the goods was through a distributor. The corporations had a contract with one Obergfel, doing business as Obergfel Bros., in Los Angeles, California. Obergfel was a wholesaler. His contract provided that he would distribute the goods of defendants throughout this and other western states. He was the sole distributor for these goods and they arrived at retail outlets in no other way than through him (if the corporations sold direct they had to remit a commission to Obergfel, which was never done). Title to the goods was to remain in the corporations until the goods were sold although the agreement begins with a statement that the parties agree to buy and sell. Obergfel was to warehouse the goods and carry insurance on them in his own name. The corporations set the prices and required a report of stock on hand each month. They provided all the advertising for their products. They had no offices in this state and had no interest other than the title to the goods in the business of Obergfel. The latter ran his business entirely on his own. He managed his sales force and collected the accounts. He would represent himself to prospective purchasers as the representative of the corporations, but used his own cards and not those of the corporations. The officers or agents of any kind of the corporations did not come to California except twice, once for a medical convention and at one other time. At the convention the company had an exhibit with its own name on it and Obergfel was there along with one Oclassen, a representative of the company. Obergfel represented a number of companies in this line of goods other than the corporations, and he always held himself out

as their representative. The corporations had agreed to insure Obergfel against any action on behalf of the Federal Government under the Food, Drug and Cosmetic Act. It does not appear whether retailers' or consumers' orders were subject to approval by the corporations in New York, but they never in fact were rejected. The contract provides that the distributor is considered by the parties to be an independent contractor. Sections 6400-6403, Corporations Code, requiring the filing of articles of incorporation and statement, have not been complied with.

On the basis of these facts the question is whether the corporations were doing business within this state within the meaning of the Corporations Code and to the extent that assumption of jurisdiction over them is consistent with due process. (See *George Frank Co.* v. *Leopold & Ferron Co.,* 13 Cal.App. 59 [108 P. 878].) ■ The essence of doing business is that the corporation is present within the state sufficiently to constitute it just and equitable that it be amenable to process within the state. (*Milbank* v. *Standard Motor Const. Co.,* 132 Cal.App. 67 [22 P.2d 271] ; *Boote's Hatcheries, Etc. Co.* v. *Superior Court,* 91 Cal.App.2d 526, 528 [205 P.2d 31].) ■ The technical distinction between an independent contractor and an agent is, for this purpose at least, immaterial, except as it may be evidence one way or the other (*Thew Shovel Co.* v. *Superior Court,* 35 Cal.App.2d 183 [95 P.2d 149] ; *Moore Machinery Co.* v. *Stewart-Warner Corp.,* 27 F. Supp. 526). It would seem, authority lacking, that the same principle should apply as to the difference between a factor and an agent or employee. Thus the provision in the contract that the parties consider Obergfel to be an independent contractor seems insufficient to absolve the corporation from amenability to service (*Thew Shovel Co.* v. *Superior Court, supra*). The essential thing is merely whether the corporations are present within the state, whether they operate through an independent contract, agent, employee or in any other manner.

Only one case has been found which holds that respondents are factors, and which on this basis alone apparently further holds that the respondents are therefore not doing business within this state. In *McCarley* v. *Foster-Milburn Co.,* 93 F. Supp. 421, essentially the same facts as above stated were outlined and relied on to support this conclusion. That action arose on a motion to change venue to this state, but the issue of jurisdiction was the same as here, and it was the same

Obergfel there, as here, that was sought to give the California courts jurisdiction over the same defendants in this case. It is not clear whether that decision turns on whether Obergfel was an agent capable of receiving process on behalf of the corporations or whether his activities constituted the "doing of business" by the corporation. There is a radical difference (20 C.J.S. 159). The cases cited on behalf of the federal court's decision are cases where the "doing of business" was sufficient to bring the corporation involved within the purview of some state regulatory statute. There is likewise a radical difference here (20 C.J.S. 152; *Thew Shovel Co.* v. *Superior Court, supra*, p. 185). No California cases have been found where the mere fact that a person is a factor decides the question whether the principal is doing business in this state. The case of *Irvine Co.* v. *McColgan,* 26 Cal.2d 160 [157 P.2d 847, 167 A.L.R. 934], cited by defendants to this effect, does not so hold. Fletcher on Corporations, volume 17, page 520, brings out the point that doing business for the purpose of process is quite a different thing from the doing of business for the purpose of state regulatory or taxation statutes. Fletcher at another place expressly reiterates what is said above, that "the business activities of a foreign corporation in a state may be of such a nature as to render it amenable to service of process in an action brought against it in the state, and yet not be sufficient to render it necessary for the corporation to qualify under the requirements of a statute imposing conditions and restrictions upon the right to do business in the state. (Citing cases.)" (Fletcher, vol. 17, p. 468, vol. 18, p. 339.) This would indicate that the McCarley case, *supra,* and the cases cited by defendants do not hold that the mere fact of factorage is sufficient to immunize the corporations from process in this state. If this is the case then the technical distinction, as said above, between a factor and any other relationship is merely one fact to be weighed with all the others in arriving at a decision. ■ In all cases it is a question of fact (Fletcher, *ibid.,* 470; *Thew Shovel Co.* v. *Superior Court, supra*).

■ It is true that the few isolated trips to this state by the representative of the corporations are not sufficient to give the court jurisdiction. (*Proctor & Schwartz, Inc.* v. *Superior Court*, 99 Cal.App.2d 376 [221 P.2d 972].) It is also true that advertising alone is not sufficient. (*People's Tobacco Co.* v. *American Tobacco Co.,* 246 U.S. 79 [38 S.Ct. 233, 62 L.Ed. 587].) ■ It is true that the cases relied on by petitioner

are distinguishable on their facts. But in all cases where the problem must stand on the facts of the case the likelihood is that the facts will be different. It is not a question of taking isolated language out of a case in these situations as defendants contend but of attempting to extract a principle that preceding courts have themselves extracted from the facts before them. With this in mind the language in *Sales Affiliates, Inc.* v. *Superior Court*, 96 Cal.App.2d 134, at page 136 [214 P.2d 541], is not irrelevant. When this is combined with the fact situation in the Thew Shovel case (operation through a distributor) it might well be held that less connections with the state by a foreign corporation are required, at least for the purpose of service of process, than would at first glance appear.

■ It is proper to note that this is presumably a tort or warranty action; that the injured party is a resident of this state; that it would undoubtedly be burdensome for him to go to New York to sue; that the corporations felt that they were bound to stand behind their products at least as far as federal regulations and actions were concerned. In the final analysis it would seem that this is really not a question of the power of the state, but whether there is afforded to both parties a greater amount of justice by allowing suit in this state rather than requiring it elsewhere. (See 20 C.J.S. 148; *International Shoe Co.* v. *Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) It can be assumed that adequate notice has been or will be received by the corporations. If this is the case the following language is pertinent: "In the former it is, of course, a more or less continuing course of business which is meant to be regulated, whereas in the latter the object sought is only to give notice to a corporation of a pending action. The tendency is to hold that whatever is reasonably effective for this purpose is a good service." (*Beach* v. *Kerr Turbine Co.,* 243 F. 706, 708.)

■ Any distinction as to where, exactly, interstate commerce ends and local commerce begins seems to be largely immaterial in deciding the precise problem at hand. Whether the particular business of these corporations is denominated intra or interstate commerce does not change the fact that they are still doing business in this state. That distinction only poses the other question of burden on interstate commerce, which is not raised here, nor which would seem plausible if it were.

■ We are satisfied that a liberal and reasonable view of the question of jurisdiction calls for a holding that the plaintiff and petitioner herein should be accorded the right to try out in the courts of this state the issues raised in his complaint. Accordingly the trial court should vacate its order quashing service of summons and reinstate the pleadings for a trial on the issues of the controversy.

Let a peremptory writ issue as prayed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied July 3, 1952, and a petition by respondent and real parties in interest for a hearing by the Supreme Court was denied July 31, 1952. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.