[Civ. No. 19678. Second Dist., Div. Two. Dec. 31, 1953.]

C. P. JETER, Appellant, v. AUSTIN TRAILER EQUIP-MENT COMPANY (a Corporation), Respondent.

*Assigned by Chairman of Judicial Council.

King & Mussell for Appellant.

Parker, Stanbury, Reese & McGee for Respondent.

FOX, J.—In April, 1951, plaintiff brought an action for damages against Austin Trailer Equipment Company, a Michigan corporation (hereinafter referred to as Austin), and Callahan Engineering Company, a copartnership, alleging a sale by defendants of a defective Austin "fifth wheel" to plaintiff in January, 1949, and that it broke on a public highway in Arizona in June, 1950, causing injury to plaintiff. In its answer Callahan admitted its partnership status, with its principal place of business in Los Angeles. It denied, however, the sale and the further allegation that it was the agent of Austin.

Plaintiff seeks to hold both defendants responsible on the ground that they warranted the equipment to be fit and proper for the indicated use. He also alleges Austin was negligent in the manufacturing of said fifth wheel.

Upon plaintiff's application, the trial court ordered service of summons and complaint upon Austin by delivery to the Secretary of State, as provided in Corporations Code, sections 6501 and 6502. Such service was made and thereupon Austin appeared specially and moved to quash service. The motion was heard upon affidavits and the files of two superior court actions to which Austin was a party. No oral testimony was received. It is from the order granting this motion that plaintiff appeals.

There is very little conflict in the affidavits. In one filed by F. Van Wassenhover, affiant states that he is manager of A-1 Auto Works, Inc., in Los Angeles; that an examination of their records reveals purchases of Austin fifth wheels in June and July, 1951, from Foster Trailer Company of Los Angeles. This is followed by an affidavit by Milton E. Foster, president of the Foster Trailer Company, that his company purchases from Austin fifth wheels and other trailer equip-

ment that it manufactures. Such purchases are made both direct from the Austin Company, Muskegon, Michigan, and "also from another of their sales representatives, Walter L. Shirey, of Oakland, California."

One of the files the court had for its consideration was that of *Tremeroli* v. *Austin Trailer Equipment Company* from the Superior Court of San Francisco. In that case, as in the instant proceeding, service was effected by serving the Secretary of State. Austin made a motion to quash that service which, however, was denied in May, 1947. Thus, as of that time, Austin was sufficiently present in this state by reason of its business activities to be amenable to process of our courts and subject to their jurisdiction. An examination of the affidavits in that case reveals that they relate largely to the activities of Mr. Shirey in relation to and on behalf of Austin. One affidavit states that the concern of which the affiant was the controller had been doing business with Austin since 1942 and that the inception of its business with Austin was prompted by Shirey as the factory representative of Austin in California, and that since that time the visits of Shirey to this concern had been frequent and were made for the purpose of soliciting business. In another affidavit it is stated Shirey called on this customer approximately every 60 days for the purpose of soliciting orders for Austin over a six-year period. It is also stated in an affidavit of one of Austin's officers that Austin's sales in California in 1946 "amounted to not more than approximately 10 percent of the entire gross sales" of Austin.

It was further disclosed in the Tremeroli file that in and prior to 1947 Austin maintained a stock of its equipment at Shirey's warehouse in Oakland and that about 10 per cent of his orders were filled from such local stock. As to the remaining 90 per cent of the business, the orders were sent to Austin's main headquarters in Michigan, where they were acted upon, shipments being made direct to the purchaser. Shirey, also, upon occasions, adjusted complaints against Austin. A number of the affidavits stated that he was known to the affiant as the "California representative" of the Austin Company.

The other file which the court had before it for consideration was *Floyd Austin* v. *Ash,* No. 542256 of the Los Angeles Superior Court. The Austin company was also a defendant. An attempt to gain jurisdiction over the company was made by service upon Shirey. A motion by the Austin company to quash service was granted in March, 1949. The motion was upon two grounds: (1) that it was not doing business

in California, and (2) Shirey was not its agent for service of summons. Shirey's affidavits in that case averred that he was an independent contractor operating a business solely for his own account as a selling agent for products of several manufacturers, including Austin, for whom he solicited orders which were accepted and filled in Michigan by Austin. His sole compensation from Austin was a commission on actual sales. He paid his own employees, and leased on his own account a warehouse in which he kept products he had ordered from the companies for whom he solicited business. Shirey stated he caused to be inserted in the 1948 telephone directory in Oakland, California, as a listing on his own telephone subscription, the name of ''Austin Trailer Equipment Company,'' for which listing he alone paid. He denied that he was an officer, agent or employee of Austin, or a person designated for service of process upon Austin, or was authorized by Austin to accept service of process.

In his affidavit in the instant matter Shirey states he owns and operates his own business under his own name and is engaged in selling the products of several manufacturers in eight western states strictly on a commission basis; that he is solely responsible for all expenses of operation including the wages of his employees and his automobile and other travel expenses; that no one has any control or authority over him in his solicitation of orders and that Austin is one of the companies whose products he thus offers for sale.

As to his specific relation to Austin, Shirey states he ''solicits orders for products manufactured by Austin . . . including 'fifth wheels' ''; that such orders are forwarded to Austin in Michigan for acceptance and are filled by direct shipment to the purchaser from the factory there, which also handles the billing and collections. He is paid on a commission basis. Neither he nor Austin service any of the equipment. Shirey describes himself as ''serving Austin . . . as a selling agent,'' but disclaims authority to otherwise represent the company.

O. A. Seyferth, president of Austin, states the corporation was dissolved on December 31, 1951. His affidavit affirms that orders for equipment are accepted or rejected at the company's principal place of business in Muskegon, Michigan, and payments therefor are made there. He asserts that Austin does not maintain any agents or employees in California. He does state, however, that Austin ''retains the services'' of Shirey to solicit sales of its equipment on a commission basis. Shirey has no authority to represent the company in any way other

than as a commission salesman according to the Seyferth affidavit.

The single, disputed issue is whether Austin was "doing business in this state" (Code Civ. Proc., § 411(2)) in such a manner and to such an extent as to make it amenable to local process at the time summons was served upon the Secretary of State of California.

The inquiry as to whether a corporation is "doing business" has three significant aspects. It may determine (1) the power of the state to impose local taxation, (2) whether the corporation falls within the state's regulatory power, or (3) whether jurisdiction exists for service of process. (*Ruppert* v. *Morrison*, 117 Vt. 83 [85 A.2d 584, 588]; 23 Am.Jur., Foreign Corporations, p. 339; Restatement, Conflict of Laws, § 167; 16 U.Chic.L.Rev., 523, 525-526.) The degree of activity or contact which is required varies according to the purpose for which the foreign corporation is sought to be subjected to local laws. (*Thew Shovel Co.* v. *Superior Court*, 35 Cal.App.2d 183 [95 P.2d 149]; 23 Am.Jur., Foreign Corporations, § 362.) Thus, a state may have jurisdiction over a foreign corporation by virtue of its local activities for purposes of service of process, whilst lacking the power to tax or regulate the same corporation. (*Fielding* v. *Superior Court*, 111 Cal.App.2d 490, 494 [244 P.2d 968]; *Liquid Veneer Corp.* v. *Smukler*, 90 F.2d 196; *Thurman* v. *Chicago, M. & St. P. R. Co.*, 254 Mass. 569 [151 N.E. 63, 46 A.L.R. 563].) A less strict meaning may be attributed to the phrase "doing business" where the question relates simply to whether a state court has jurisdiction than where taxation or regulatory statutes are involved. (*Fielding* v. *Superior Court, supra*, 496; *Davis-Wood Lbr. Co.* v. *Ladner*, 210 Miss. 863 [50 So.2d 615, 621].) But whether the interpretation of what constitutes "doing business" be broadly or narrowly construed in consonance with the purpose for which the power of a state over a foreign corporation is sought to be exercised, it is a fundamental requisite that it be compatible with the requirements of due process under the federal Constitution. (*West Publishing Co.* v. *Superior Court*, 20 Cal.2d 720, 726 [128 P.2d 777]; *Bomze* v. *Nardis Sportswear*, 165 F.2d 33, 35.) Whether a corporation is doing business in a state in the sense required by a process statute is peculiarly dependent upon the facts of the particular case. (*West Publishing Co.* v. *Superior Court, supra*, 727; *Boote's Hatcheries etc. Co.* v. *Superior Court*, 91 Cal.App.2d 526 [205 P.2d

31].) No inflexible algebraic formula can be applied as a criterion governing every situation. The line of demarcation in many instances is often a tenuous one. (*State* v. *Winstead*, 66 Idaho 504 [162 P.2d 894, 897].)

In *Kneeland* v. *Ethicon Suture Laboratories*, 118 Cal.App. 2d 211 [257 P.2d 727], there appears an exhaustive treatment of the issue here posed. In analyzing the cases which have significantly contributed to the changing philosophy regarding the concept of ''doing business'' which will subject a foreign corporation to local process, it is pointed out that a modern treatment of the subject must begin with *International Shoe Co.* v. *Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057]. Previous to that case, the power of a state court to render a judgment *in personam* against a foreign corporation rested on judicially-devised fictions or symbolisms, the court frequently relying on an ''implied consent'' by the corporation to an exercise of jurisdiction, or to the ''presence'' of the corporation within the state where its activities are carried on. (16 U.Chi.L.Rev., 523, 524; 26 So.Cal.L.Rev., 215, 216.) In the landmark International Shoe case, the climate of judicial thinking on this problem, formerly encased in rigid legal formalisms, was profoundly revised. The approach taken was based on a realistic appraisal of the considerations involved. The Supreme Court of the United States, speaking through Justice Stone, substituted a qualitative criterion in place of the ''mechanical or quantitative'' concepts formerly accepted as determinative. The court there stated that the ''test is not merely . . . whether the activity is a little more or a little less.'' (*International Shoe Co.* v. *Washington, supra,* 319.) All that is required is that the foreign corporation have ''certain minimum contacts with it (the forum) such that the maintenance of the suit does not offend 'traditional notions of fair play and justice.' '' (P. 316.) The requirements of due process ''may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection.'' (P. 317.)

The principles announced in the International Shoe case have had a most telling and devastating effect on the venerable rule laid down in *Green* v. *Chicago, B. & Q. R. Co.,*

205 U.S. 530 [27 S.Ct. 595, 51 L.Ed. 916], that personal jurisdiction cannot be obtained over a foreign corporation when the sole basis thereof consists of "mere solicitation" within the area of the forum's sovereignty. Dissatisfaction and disagreement with the so-called "mere solicitation" rule antedated the opinions expressed in the International Shoe case. In *International Harvester Co. of America* v. *Kentucky,* 234 U.S. 579 [34 S.Ct. 944, 58 L.Ed. 1479], the rule of the Green case was branded as "extreme." In the Harvester case, the facts disclosed that the company had sales agents in the State of Kentucky who solicited orders which were then sent to the out-of-state home office for approval, where-upon machinery in fulfillment of the orders was shipped into Kentucky. The agents were authorized to receive payment in money or checks, and might take the notes of customers, payable at Kentucky banks. While the court found "something more than mere solicitation," it did not emphasis these latter transactions of the agents. It stated: *"Here was a continuous course of business in the solicitation of orders which were sent to another state and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. This was a course of business, not a single transaction."* (P. 585.) (Italics added.) Kentucky was held to have jurisdiction.

Other leading state authorities, disinclined to follow blindly the "mere solicitation" rule, have interpreted the Harvester Company case as turning basically on the quantity and continuity of the solicitation of business, rather than on the incidental supplementary circumstance of collection of money by the salesmen. In *Tauza* v. *Susquehanna Coal Co.,* 220 N.Y. 259 [115 N.E. 915], Justice Cardozo stated the proposition that where there is a systematic and regular solicitation of orders as part of a continuous pattern of business activity by agents of the corporation, resulting in a flow of goods into the state in fulfillment of the orders, the corporation is sufficiently present in the state to render it amenable to local process. In *American Asphalt Roof Corp.* v. *Shankland,* 205 Iowa 862 [219 N.W. 28, 60 A.L.R. 986], defendant was a foreign corporation whose agent in Iowa, on whom service was made, had authority only to solicit orders which were forwarded to the Missouri home office for approval. He had no authority to accept orders, make contracts, or receive payments. He maintained no office in Iowa. In holding that defendant was doing business in

Iowa, the court relied heavily on the Harvester and Tauza cases, *supra*. The court stated: ". . . it seems to us that the facts disclosed by the record establish that petitioner was, and has been for many years, engaged in a systematic and continuous course of business in the solicitation of orders and the delivery of and shipment of merchandise to numerous customers, new and long established, and that such conduct constitutes doing business in this state . . .." (*American Asphalt Roof Corp.* v. *Shankland, supra,* p. 32.)

A case from our own Supreme Court, *West Publishing Co.* v. *Superior Court,* 20 Cal.2d 720 [128 P.2d 777], is of strong didactic value. It is not amiss to observe that it anticipated the result later reached in the International Shoe case. In its discussion of the adjudicated cases since the Harvester case, it points out that while some cases have stressed the fact that the soliciting agents in the Harvester case were authorized to receive payments in Kentucky, other prominent authorities have regarded the quantity and continuity of the solicitation of business in Kentucky as the crucial aspect of the decision, citing the Tauza and Shankland cases, *supra*. The Wisconsin court in *Petition of Northfield Iron Co.,* 226 Wis. 487 [277 N.W. 168], follows the rationale of the Shankland and Tauza cases. In *Hutchinson* v. *Chase & Gilbert,* 45 F.2d 139, 141, Judge Learned Hand, in discussing the amenability of a foreign corporation to state jurisdiction, wrote as follows: "Possibly the maintenance of a regular agency for the solicitation of business will serve without more." Immediately prior to the rendition of the International Shoe decision, a review of the current trend of opinion was undertaken in *Frene* v. *Louisville Cement Co.,* 77 U.S.App.D.C. 129 [134 F.2d 511, 146 A.L.R. 926]. Justice Rutledge there said: "In other words, the fundamental principle underlying the 'doing business' concept seems to be the maintenance within the jurisdiction of a regular, continuous course of business activities, whether or not this includes the final stage of contracting [p. 515]." In recommending the abolition of the "mere solicitation" rule when the solicitation process is a continuous and permanent activity, the court said: "Solicitation without . . . additional activities . . . may be more sustained, more insistent, more productive of business than it is with them. Solicitation is the foundation of sales. Completing the contract often is a mere formality when the stage of 'selling' the customer has been passed. No business man would regard 'selling,' the

'taking of orders,' 'solicitation' as not 'doing business.' The merchant or manufacturer considers these things the heart of business.'' (P. 516.)

The advent of the enlightened and liberal pronouncements of the International Shoe case presaged a more practical handling of the concept of "doing business," untrammeled by the rigidity of the "mere solicitation" doctrine. In the International Shoe case, the defense of "mere solicitation" was raised in opposition to the assumption of jurisdiction by the Washington court. In finding this defense deficient the Supreme Court in effect disavowed the rule. This was the construction of the International Shoe case, made two years later in *United States* v. *Scophony Corp.*, 333 U.S. 795 [68 S.Ct. 855, 92 L.Ed. 1091], which involved the analogous issue of venue. The court said: "Refinements such as were previously made under the 'mere solicitation' and 'solicitation plus' criteria, c.f. *Frene* v. *Louisville Cement Co.*, *supra*, and like those drawn, e.g., between the People's Tobacco case . . . and International Harvester cases . . . were no longer determinative. The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue [p. 807]."

In *Travelers Health Assn.* v. *Virginia ex rel. State Corp. Com.*, 339 U.S. 643 [70 S.Ct. 927, 94 L.Ed. 1154], which involved an adjudication upon the question of how far a state could go in asserting jurisdiction without violating defendant's rights under the Constitution, the Supreme Court again extended the concept of what was formerly regarded as the limits of the judicial arm of the state. In the Travelers case, the foreign company was a nonprofit membership association incorporated in Nebraska, where its only office was located. It conducted a mail-order health insurance business, systematically soliciting new members, usually through the unpaid activities of Virginia residents who were already members. It delivered insurance certificates through the mail and investigated benefit claims in Virginia. After being served by registered mail, it was enjoined by the Virginia State Corporation Commission from further solicitation or sales in Virginia. The corporation appeared "specially" to quash service on the ground that Virginia did not obtain jurisdiction, arguing the Virginia Blue Sky Law authorizing service by mail violated due process. The court held that its contacts with Virginia were sufficient to sustain such juris-

diction, relying in part on the International Shoe case.

Other federal cases have adopted the new standards. It was said in *Steinway* v. *Majestic Amusement Co.*, 179 F.2d 681, 684: "These cases (International Shoe and Scophony Corporation) do indicate a definite disposition to broaden the concept of 'engaging in business' to include mere solicitation if it is sufficiently continuous to amount to a course of business." In *French* v. *Gibbs Corp.*, 189 F.2d 787, 789, it is reiterated that ". . . continuous activities, be they as little as one will, satisfy the necessity of that physical 'presence' on which jurisdiction depends in a jurisprudence, territorially limited." In overruling a motion to quash summons based on the defense of mere solicitation, the court in *Star Elkhorn Coal Co.* v. *Red Ash Pocahontas Coal Co.*, 102 F. Supp. 258, 259, quotes the following language from *Nippert* v. *City of Richmond*, 327 U.S. 416 [66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844]: ". . . *that 'mere solicitation,' when it is regular, continuous and persistent, rather than merely casual, constitutes 'doing business,' contrary to formerly prevailing notions.*" (Italics added.) In accord with these views are *Boyd* v. *Warren Paint & Color Co.*, 254 Ala. 687 [49 So.2d 559]; *Smyth* v. *Twin State Improvement Corp.*, 116 Vt. 569 [80 A.2d 664]; *Red Top Brewing Co.* v. *Mazzotti*, 107 F. Supp. 921.

Passing now to the California view, there is little question that this state stands with the vanguard of jurisdictions committed to a liberal approach to this issue. In *Perkins* v. *Louisville & N. R. Co.*, 94 F.Supp. 946, the court was presented with the question as to whether or not the solicitation of business by a foreign corporation maintaining an office in San Francisco, California, constituted doing business so as to render the corporation subject to the jurisdiction of the courts of this state. Under the rule of *Erie R. Co.* v. *Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487], the law of California was regarded as primarily decisive of the issue. After considering the California cases, the court observed that "it is apparent that California courts take a broad view of the concept of doing business by a foreign corporation, and although no case has been found which involved mere solicitation, it is the view of this court that under the California law the continued solicitation of business by a foreign corporation maintaining a regular office within this state constitutes doing business and renders the foreign corporation present in the state of California and

amenable to its processes [p. 949]." In *Kneeland* v. *Ethicon Suture Laboratories,* 118 Cal.App.2d 211, 221 [257 P.2d 727], the court remarks that the "latest California cases . . . seem to consider the question of 'doing business' within the meaning of section 411 (Code Civ. Proc.) as synonymous with the power of the state to subject foreign corporations to local process." Such power, as the International Shoe case teaches, depends on the existence of sufficient continuous and substantial contacts with the state of the forum to make it just and reasonable under traditional concepts of fair play and justice to permit the state to assume jurisdiction. And, as the court in the Kneeland case continues, the concept of "doing business" enlarges to the extent that the federal Constitution permits it to expand through "decisions of the federal courts interpreting the due process clause [p. 222]."

In *Sales Affilates, Inc.* v. *Superior Court,* 96 Cal.App.2d 134, 137 [214 P.2d 541], the test of "doing business" for purposes of process was related to an examination of whether the foreign corporation's modus operandi in the forum gave it "substantially the same commercial advantages that would be available to it through an office or a force of employees maintained in the state devoted exclusively to this phase of its business." The business last referred to was the solicitation by "jobbers" of licensing agreements with local beauty shops for the use of the foreign corporation's products. Furthermore, whether those activities and contacts of the foreign corporation indigenous to the forum are carried on through an independent contractor working on a commission basis or by salaried agents, is not, standing alone, of controlling importance when the issue involved is amenability to local process. (*Thew Shovel Co.* v. *Superior Court,* 35 Cal.App. 2d 183 [95 P.2d 149]; *Fielding* v. *Superior Court,* 111 Cal. App.2d 490 [244 P.2d 968].) "The essential thing is merely whether the corporations are present within the state, whether they operate through an independent contract, agent, employee, or in any other manner." (*Fielding* v. *Superior Court, supra,* 494; *Iowa Mfg. Co.* v. *Superior Court,* 112 Cal.App.2d 503, 506 [246 P.2d 681].)

Finally, we may conclude this digest of the authorities with an excerpt from *Koninklijke L. M.* v. *Superior Court,* 107 Cal.App.2d 495, 500 [237 P.2d 297], where the late Mr. Justice Wilson, speaking for this court, stated: "In the more recent decisions, solicitation, without more, constitutes

doing business within a state when the solicitation is a regular, continuous and substantial course of business. [Citations.]"

By way of recapitulation of the current state of the law under the evolving concept of the "doing business" requirement, it is deducible from the cases that the essentials of due process are fully met, at least for the purposes of amenability to local process and jurisdiction, if a foreign corporation maintains substantial contacts with a state through a course of regularly-established and systematic business activity, as distinguished from casual, isolated, or insubstantial contacts or transactions. The court must be astute to weigh the facts of the individual case to determine whether the particular type of activity in, relation to, or nexus with, the forum is of such substance as will make it just and equitable to conclude that a corporation is "doing business" in the sense required by the purpose at hand.

Applying these principles to the instant case, it is abundantly clear that Austin was doing business in California in the sense required to make it amenable to service of process here. For at least five years prior to 1947, in addition to Shirey's solicitation at its behest, Austin kept merchandise in California, filled some of its orders from local stock, and partially contributed, on occasion, to the payment of Shirey's business rental. Early in 1947, it was found in the Tremeroli litigation, to be doing business in California. "The status of 'doing business' once established is presumed to continue unless controverted by other evidence [citations]." (*Thew Shovel Co.* v. *Superior Court,* 35 Cal.App.2d 183, 189 [95 P.2d 149].) This presumption was not controverted by the 1949 superior court case of *Austin* v. *Ash.* There the service of process which was quashed was made upon Shirey. Such ruling was entirely proper, since Shirey was not an agent of Austin and was not authorized to receive such process. A foreign corporation may be doing business in a state through the instrumentality of independent contractors located therein, yet those persons through whom its local business is conducted may not be so bound to the foreign corporation as to make them agents capable of receiving process on behalf of the corporation. (*Fielding* v. *Superior Court,* 111 Cal.App.2d 490, 495 [244 P.2d 968]; 20 C.J.S., Corporations, p. 159.) This was the rationale underlying *Jameson* v. *Simonds Saw Co.,* 2 Cal.App. 582 [84 P. 289], as well as *Fuller* v. *Lindenbaum,* 29 Cal.App.2d

227 [84 P.2d 155], where the attempted service of a foreign corporation under section 404 of the Vehicle Code was quashed upon a showing that a commission salesman was not an agent of the foreign corporation so as to render the corporation liable for the negligence of the salesman.

 Austin contends that in any event its mode of operation has changed since the time of the Tremeroli case in 1947, and that the facts in the instant case are considerably different. It points out that where formerly it kept stock in California, this is no longer true. It has discontinued any payments towards Shirey's rent. Other differences are also noted, and Austin suggests in its brief that the Tremeroli case might have induced these changes. We must fully accept the accuracy of these statements. However, the fundamental fact remains, as appears from the affidavits filed by Austin itself, that it has continued to retain Shirey's services, and these services have always consisted of solicitation of orders for Austin's product. It is clear that the basic activity of solicitation carried on in this state by Shirey in Austin's behalf was not haphazard, irregular or sporadic but was of a continuous and systematic nature during the past decade. In other words, there has been no interruption in Shirey's solicitation activities, which have been constant and regular, and as the direct result of which there has been a flow of Austin's products into California. This phase of Austin's contacts with and activity in California has undergone no transformation, though certain of its local arrangements may have been altered. Under the prevailing rules, Austin was doing business here in the sense required to make it amenable to process in this state where it carries on substantial activities.

Austin suggests there is no specific showing that any cause of action arose in this jurisdiction. It is clear, however, from the complaint that both causes of action are transitory in character and that neither is based upon a theory that is repugnant to the laws or public policy of this state. It is now established that, absent serious inconvenience to defendant or other equitable considerations, there is no constitutional limitation precluding the assumption of jurisdiction over such causes of action by the courts of a state in which a foreign corporation is doing business. (*Perkins* v. *Benguet Consol. Min. Co.*, 342 U.S. 437 [72 S.Ct. 413, 96 L.Ed. 485].) Austin has made no showing that, in any estimate of the inconveniences or balancing of the hardships between it and

plaintiff, it would be inequitable or unduly burdensome to require it to defend this action in our courts. In *Koninklijke L. M.* v. *Superior Court,* 107 Cal.App.2d 495 [237 P.2d 297], this court sustained the exercise of jurisdiction over a foreign corporation although the cause of action arose in England and was unconnected with business done locally.

Since Austin's activities in this state bring it within the framework of the "doing business" concept for the purpose of assumption of jurisdiction and amenability to process it was error to quash service.

The order is reversed.

Moore, P. J., concurred.

A petition for a rehearing was denied January 25, 1954, and respondent's petition for a hearing by the Supreme Court was denied February 24, 1954. Edmonds, J., was of the opinion that the petition should be granted.