[Civ. No. 16420.  First Dist., Div. Two.  Oct. 21, 1954.]

ESTWING MANUFACTURING COMPANY (a Corporation), Petitioner, v. SUPERIOR COURT OF SAN MATEO COUNTY et al., Respondents; DAVID J. GALLOW, Real Party in Interest.

Pillsbury, Madison & Sutro, John B. Bates and Anthony P. Brown for Petitioner.

No appearance for Respondents.

Morgan and Beauzay for Real Party in Interest.

KAUFMAN, J.—Petitioner prays that this court restrain the San Mateo Superior Court from further proceeding in an action in which petitioner has been named defendant on the ground that because petitioner, a foreign corporation, does not do business in California, it is not subject to the jurisdiction of respondent San Mateo Superior Court; petitioner also prays that this court compel the San Mateo Superior Court to vacate its order denying petitioner's motion to quash the substituted service made on it.

Respondent David J. Gallow filed a complaint in respondent superior court alleging that he was injured when a piece of metal from the head of a hammer which he was using flew off and imbedded itself in his arm; that he had received possession of the hammer from Schopke and Burke Lumber and Hardware Company; that the hammer had been negligently manufactured by petitioner. Petitioner is an Illinois corporation engaged in the manufacture of hammers and hatchets. Substituted service of summons was made on it through the Secretary of State who forwarded the summons to petitioner in Illinois. On August 27, 1954, after petitioner had appeared specially to contest the jurisdiction of the court, respondent superior court denied its motion to quash the substituted service.

Petitioner's contention is that its motion to quash the substituted service should have been granted because there was no evidence before the superior court showing that the latter had jurisdiction over petitioner.

The evidence before the superior court (by depositions and affidavits) brought out the following facts: Petitioner has one factory which is located in Illinois; it maintains no office nor sales force in California; its products are sold only to wholesalers with whom it has no franchise agreements or other contracts; petitioner's only solicitation of business from wholesalers consists in the mailing of its catalogue and price lists to the wholesalers who then mail their orders to petitioner; petitioner then fills the orders and ships the products to the wholesaler; petitioner advertises in national trade and other magazines, but does no local advertising of its products;

petitioner corresponds infrequently with its California wholesalers and has furnished advice on request concerning the promotion of petitioner's products; petitioner has never qualified to do business in California, does not pay California taxes, does not list any office in California on its stationery or in its catalogues, or in any telephone or other directory; petitioner owns no property in California.

█ Whether a foreign corporation is doing business in a state so as to be amenable to its process has been held to be primarily a factual determination. █ As stated by our Supreme Court in *West Publishing Co.* v. *Superior Court* (1942), 20 Cal.2d 720, 728 [128 P.2d 777], "it is not *any* activity of a corporation in a state other than that of its residence which will justify the conclusion that it is 'doing business' there, . . . 'the business must be of such a nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted.' "

Petitioner has cited the case of *Martin Bros. Elec. Co.* v. *Superior Court* (1953), 121 Cal.App.2d 790 [264 P.2d 183]. The facts of that case appear to be, as petitioner contends, substantially identical to those of the case at bar. There the petitioner foreign corporation was a manufacturer of electric hair dryers which sold its product to California wholesalers; it had no written contract with its distributors, maintained no office, salesmen, nor stock of merchandise in California, did no local advertising but advertised its product nationally, shipped no merchandise to any business house in California on consignment or on any other basis whereby ownership would remain in the petitioner. The court issued a writ directing the superior court to desist from further proceedings against the petitioner and directing the superior court to vacate an order denying the petitioner's motion to quash the substituted service of summons; the court also stated: "we have found no case holding that these facts, standing alone, are sufficient to make the foreign corporation amenable to process in this state."

This court in *Fielding* v. *Superior Court*, 111 Cal.App.2d 490 [244 P.2d 968], held that it is a factual question as to whether a corporation is doing business in this state for the purpose of being served with process; that each case must stand on its own facts in determining this question.

█ It is our view that under the facts in the record most

favorable to respondent there is no showing that petitioner is doing business in California so as to make it subject to the process of California courts.

We conclude that a peremptory writ of prohibition and mandamus should issue as prayed.

Writs of prohibition and mandamus to issue as prayed.

Nourse, P. J., concurred.

DOOLING, J.—I dissent.

The majority opinion is open to the objection that it does not state the facts most favorable to support the trial court's action. The following facts relied upon by respondent, and not mentioned therein, seem to me important.

1. In addition to national advertising petitioner furnishes free of charge to its wholesale distributors electrotypes and illustrations for their use in local advertising.

2. It furnishes as many working or moving window displays for distribution to retailers (free of charge) as the wholesale distributors request.

3. It encourages purchasers of its hammers which break or are defective to deal directly with it, soliciting them to send the hammers direct to petitioner and petitioner in those cases makes adjustments directly with the purchasrs. This accounts for about one-third of all adjustments made and is a continuous and established practice.

In *Travelers Health Assn.* v. *Commonwealth of Virginia*, 339 U.S. 643 at p. 647 [70 S.Ct. 927, 94 L.Ed. 1154] the court said: "But where business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state, courts need not resort to a fictional 'consent' in order to sustain the jurisdiction of regulatory agencies in the latter state."

Here by its adjustment program petitioner has created "continuing relationships and obligations" with citizens of California. The test of jurisdiction is whether the corporation had "certain minimum contacts with it (the State) such that the maintenance of the suit does not offend 'traditional notions of fair play and justice.' " (*International Shoe Co.* v. *State of Washington, etc.*, 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) These requirements "may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend

the particular suit which is brought there.'' (*Id.* p. 317.) The California courts have fully accepted this concept. (*Fielding* v. *Superior Court,* 111 Cal.App.2d 490 [244 P.2d 968], cert. den. 344 U.S. 897 [73 S.Ct. 277, 97 L.Ed. 693]; *Sales Affiliates, Inc.* v. *Superior Court,* 96 Cal.App.2d 134 [214 P.2d 541]; *Jeter* v. *Austin Trailer Equip. Co.,* 122 Cal. App.2d 376 [265 P.2d 130]; *Kneeland* v. *Ethicon Suture Laboratories, Inc.,* 118 Cal.App.2d 211 [257 P.2d 727].)

The activities of petitioner mentioned herein in my judgment are sufficient to distinguish this case from *Martin Bros. Elec. Co.* v. *Superior Court,* 121 Cal.App.2d 790 [264 P.2d 183].

I would deny the writ.

The petition of the Real Party in Interest for a rehearing was denied November 19, 1954, and his petition for a hearing by the Supreme Court was denied December 15, 1954. Carter, J., was of the opinion that the petition should be granted.