**R. A. ABEL, Appellant,**

v.

**ALBINA ENGINE & MACHINE WORKS, Appellee.**

**No. 6394.**

United States Court of Appeals Tenth Circuit.

Nov. 17, 1960.

Rehearing Denied Dec. 14, 1960.

L. D. Hoyt, Oklahoma City, Okl. (A. K. Little, Oklahoma City, Okl., was with him on the brief), for appellant.

John A. Johnson, Oklahoma City, Okl., for appellee.

Before MURRAH, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, R. A. Abel, instituted an action in the United States District Court for the District of Oklahoma against Albina Engine and Machine Works,[1] Safeway Rental and Sales Company,[2] and Victor L. Phillips Company,[3] all non-resident corporations. In his ac-

1. Herein called Albina.

2. Herein called Safeway.

3. Herein called Phillips.

tion, he sought to recover damages for injuries which he had sustained. Service of summons on Albina was attempted under 18 Oklahoma Statutes, § 472. This appeal challenges an order of the District Court sustaining Albina's motion to dismiss on the ground that valid service of summons had not been obtained on it. 18 Oklahoma Statutes, § 472, is a rather lengthy section providing for service of summons upon foreign corporations who are or have been doing business in the State. In substance, the section provides that if such corporations have failed either to appoint a resident agent upon whom service of summons can be had or have failed to file in the office of the Secretary of State copies of articles of incorporation or have failed to pay license fees required by law, service of summons upon the Secretary of State shall be sufficient to give the court jurisdiction over them.

Abel, in his petition, alleged that he was a resident and citizen of Oklahoma; that Albina, Safeway and Phillips were foreign corporations; that Albina was doing business in Oklahoma but had not become domesticated therein; that by agreement with Safeway, Albina had agreed to place in Oklahoma certain equipment manufactured and owned by it, to be rented, and the proceeds from the rentals of such materials and equipment were to be divided between Albina, Safeway and Phillips. He alleged that the rental and warehousing of the equipment so placed was to be handled by Safeway and Phillips; that included in the equipment sent into Oklahoma by Albina, and at all times owned by it, was a swinging scaffold, controlled by two suspended wire cables. It was alleged that this apparatus was defective and that through the negligence of the defendants, Abel was injured when a cable broke while he was using the equipment.

Whether proper service was had on Albina, depends upon whether it was or had been doing business in Oklahoma. As an alternative ground in support of the service, Abel contends that in any event Albina submitted itself to the jurisdiction of the court by filing a cross-claim against its co-defendant Safeway for any judgment which might be rendered against it. Because of the conclusion we have reached that valid service of summons was had on Albina, it will not be necessary to resolve this second contention.

Whether service of summons against Albina was valid depends upon whether Albina was or had been doing business in Oklahoma within the meaning of 18 Oklahoma Statutes, § 472. In support of the judgment, it is urged that we must look to the Federal law and not to Oklahoma law in determining whether service was properly had, and second, in any event, there is insufficient evidence to establish that Albina was doing business in Oklahoma within the meaning of 18 Oklahoma Statutes, § 472.

It is not necessary to discuss or to determine whether statutes authorizing service of process on foreign corporations by serving the Secretary of State are procedural or substantive, and if substantive, whether the Federal law controls. Most states have such statutes and the legality of such statutes is recognized by all the Federal courts. Only a few citations are necessary to establish this.[4] The only requirement with respect to such statutes is that they or their application by the State comport with the requirement of due process as guaranteed by the Fourteenth Amendment to the United States Constitution. The McGee case recognizes that "the Fourteenth Amendment places some limit on the power of State courts to enter binding judgments against persons not served with process within their borders." A statute may not lay down a yardstick of what constitutes doing business within the State which is wholly unrealistic to the concept of such term nor

---

4. International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life

Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 200, 2 L.Ed.2d 223.

may a state apply such a statute to facts which cannot be fairly said to sustain the conclusion that they constitute doing business.

The tendency of all courts is to broaden the application of the term "doing business" and to give it a more liberal interpretation.[5] This is also the tendency of the Oklahoma court. In S. Howes Company v. W. P. Milling Company, 277 P. 2d 655, the Oklahoma court quoted with approval from Marlow v. Hinman Milking Machine Co., D.C., 7 F.R.D. 751, 753, as follows: " * * * The trend of the modern decisions is to hold the foreign corporation within more strict limits of accountability in local courts. As now, Justice Rutledge of the Supreme Court held while serving in the Court of Appeals for the District of Columbia, ' * * * very little more than "mere solicitation" is required * * * ' to render a foreign corporation ' "present" for jurisdictional purposes.' " The court stated that no rule of thumb could be applied for the determination of this question and that the test was qualitative and not simply quantitative. Since the decision in each case must depend on its own facts, reviewing other decisions at length is not helpful.

The question for our determination is, would the assumption of jurisdiction over Albina under the facts of this case constitute a denial of due process as required by the decisions of the Supreme Court dealing with such statute. We think not.

Here are the facts. On June 16, 1955, Albina executed a contract with Safeway. It appointed Safeway its "distributor, agent and representative" for the distribution of its "mechanical stirrup." [6] Safeway was "to act as agent and representative of Albina Engine and Machine Works, Inc., for the sale, rental and servicing of Albina equipment * * * accessories * * *." It was Safeway's duty to make sales and rental agreements for such equipment only at prices and on the terms and conditions prescribed by the company (Albina), to keep records of all sales and rentals and collections, and to forward a copy of such record to the company at the end of each month. It was Safeway's duty to assist Albina in collecting any amounts due on all sales and rentals and to forward to Albina the original of all promissory notes, etc., executed in connection with the sale or rental of any equipment. Title to the equipment sold or rented remained in Albina. Payments were to be made to Albina. Safeway was paid on a commission basis. When payment was made, title was transferred by Albina. The contract designated the territory in which the distributor was to work which included Oklahoma. Equipment was both sold and rented in Oklahoma after the execution of this contract.

While some minor changes were made in the contract, the general operations remained the same. Thus a new rental contract was adopted in which Safeway was substituted in place of Albina as lessor. However, before Safeway could make this change, it had to obtain the approval of Albina thereto. But even this substituted rental contract provided that title to rental equipment should remain in Albina until paid for. On June 9, 1958, Albina executed a lease agreement with International Petroleum Exposition and Congress for space in a building at an exposition to be held in Tulsa, Oklahoma, in which to exhibit its equipment. The sign over the space read, "Albina Engine and Machine Works," and in smaller letters underneath, "Represented by Safeway Rental and Sales Company." Representatives of both Albina and Safeway were present during the exposition. During the exposition at least one sale of four pieces of equip-

5. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95; McGee v. International Life Insurance Co., 355 U.S. 320, 78 S.Ct. 199, 2 L.Ed.2d 223; Jeter v. Austin Trailer Equipment Co., 122 Cal.App.2d 376, 265 P.2d 130.

6. The mechanical stirrup was the hoisting device used by Abel when he was injured.

ment was negotiated by representatives of Albina, which an affidavit by Albina in support of its motion states, "might be considered as a 'direct sale.'" In a counter-affidavit in opposition to the motion to dismiss, affiant recites the execution of the distributor's contract and the holding of the Tulsa Exposition. The affidavit recites that Albina exhibited its equipment; that its Vice President and Engineer were in charge of the booth; that the rent for the space was paid for by Albina; that Albina's agents negotiated a sale of four pieces of Albina's equipment. The affidavit further states that in at least two instances, once at Enid, Oklahoma, and the other at Bethany, Oklahoma, repairs on Albina's equipment which had been sold were made by Albina's representatives. An affidavit in support of Albina's motion states that its representative Cooley was in Oklahoma City from August 5 to August 8, 1957, for the purpose of reviewing sales and rental programs and discussion of service and maintenance of equipment by Safeway Rental and Sales Company.

While the contract of June 16, 1955, was subject to cancellation, as far as the record shows it remains in full force. It may be that the relationship between Albina and Safeway is not strictly one of principal and agent, or employer and employee. We are not concerned with the strict concept of principal and agent. The test is whether the relationship between Albina and Safeway, and their activities under the contract, are such that within the spirit of the decisions it can be said that Albina was doing business in Oklahoma, for the purpose of service on foreign corporations. As indicated by the decisions, reasonableness requires us to look behind form to substance. Safeway was much more than an independent contractor. Albina did not give up its proprietary interest in its equipment when it sent it to Safeway at its place of business at Kansas City, f. o. b. its plant in Oregon.

It retained title to the equipment until it was paid for, if sold, or until the rental payments were made, if leased.

In a supplemental brief in the form of a letter dated November 3, 1960, Albina asserts that its affidavits stand uncontradicted and that an affidavit by the attorney for Abel is entitled to no consideration. Rule 56(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A. requires that affidavits must be made on personal knowledge. The affidavit of Lester D. Hoyt, Abel's attorney, is not made on information and belief. It purports to recite facts within his personal knowledge. It recites facts which also appear in Albina's affidavits. In Kenitex Corp. v. Coryell, Okl., 352 P.2d 894, 895, on which Albina relies, the situation is quite different. There, defendant's affidavit in support of its motion opposing service was uncontroverted. The affidavit stated that the defendant did not manufacture or sell paint applicating machines; that he did not apply the paint but only sells such paint to dealers f. o. b. Los Angeles, and that the other defendants were not agents, servants or employees, and that it was not engaged with the other defendants in a joint enterprise. Based solely on such affidavit, the Supreme Court of Oklahoma held that service under this statute was not properly had. The opinion states that "plaintiffs offered no counter-affidavits or evidence." Such is not the situation in this case.

It is our conclusion that not only by the contract of the parties but by the overall activities of the parties thereto in carrying out its spirit and purpose, as well as Albina's activities in Oklahoma in furtherance of the sale and rental of equipment which it at all times owned, Albina was engaged in carrying on or doing business in Oklahoma within the meaning of the Oklahoma Statutes providing for service of process on nonresident corporations.

Reversed and remanded.