[Civ. No. 21464.   Second Dist., Div. Three.   Mar. 26, 1956.]

LEWIS MANUFACTURING COMPANY (a Copartnership), Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; GOLDIE J. EDISON et al., Real Parties in Interest.

246

John Barry for Petitioner.

No appearance for Respondent.

Miller, Jones & Tollefson and Philip F. Jones for Real Parties in Interest.

WOOD (Parker), J.—Petition for writ of prohibition, based upon alleged invalidity of service of summons on a foreign partnership (service under Corp. Code, § 15700).

The petition alleges: That petitioner, Lewis Manufacturing Company, is a copartnership which was created by written agreement on June 1, 1952, by C. T. Lewis, Maurine Lewis, Charles Lewis, and Mary Lewis, who reside in Oklahoma, and no one of whom has lived in California. Prior to organizing such partnership, C. T. Lewis, as sole owner, conducted the business under the name of "Lewis Manufacturing Co.," in

which no other person owned any interest. Petitioner, upon its organization, acquired the business of C. T. Lewis and since such date continued to operate as the Lewis Manufacturing Company. C. T. Lewis, while sole owner of the business, did no business in California. On May 19, 1954, Goldie J. Edison (surviving wife of E. L. Edison), and the five children and the mother of E. L. Edison, instituted an action in the Superior Court of Los Angeles County, California, against petitioner and North & Judd Manufacturing Company, a corporation, seeking to recover damages sustained by reason of the "wrongful death of their decedent, Edward L. Edison, charged to have occurred" on December 15, 1953, "while he was employed by Kee and Simpson in Ventura County, working on an oil derrick using a safety belt," and by reason of alleged defects in the belt decedent fell and was fatally injured. The complaint alleged that petitioner and North & Judd manufactured the belt. In said cause, service upon petitioner was had under section 15700 of the Corporations Code by causing a summons with copy of complaint, and statement of last known address of petitioner, to be served on the Secretary of State on June 28, 1954. Petitioner moved to quash the service on the ground that petitioner was not subject to constructive service and had not been doing business in this state. The motion was granted on July 28, 1954, and the order provided: "It is ordered that the motion to quash service of summons . . . is granted, and the same is subject to the right and privilege of the plaintiffs to issue process at a subsequent date." On August 8, 1955, the plaintiffs in said action caused to be served on the Secretary of State a summons, copy of complaint, and affidavit of last known address of petitioner "which was mailed to your petitioner." Petitioner filed its motion to quash said service on the ground that petitioner was not subject to constructive service and had not been doing business in California. An affidavit of C. T. Lewis and the deposition of Ed Plauger (Plaugher) were introduced in evidence. The proof established that petitioner had never maintained any office, warehouse or stock of materials in this state, all persons and business establishments in California that handle petitioner's products "were and are independent of and have no financial interest in the partnership; petitioner has no control or financial interest in any business establishment in California; and all persons or business establishments that purchase petitioner's products are free to purchase competitive products of other manufacturers. Petitioner has never

had a salesman in California; has never done any manufacturing, selling or purchasing in California; has never had a bank account, paid taxes, maintained a mailing address, rented any property or maintained an agent here for the purpose of collecting accounts. Petitioner has never had a telephone listing or a listing in any directory in California, and has never owned any property in California. For the past five years Plaugher and Company, as jobber or commission agent, has effected some sales in California of petitioner's products. All sales have been limited to supply houses, and no sales have been made direct to the user of the products. The total volume of sales in California has been less than one per cent of its total sales. It has not advertised in California and does not attempt to solicit any business in California other than by mailing its catalogue and price list to firms who have purchased its products. Its sales in California have not been sufficient to justify the expense of a part-time salaried employee or the expense of sending a salesman on one trip to California. For petitioner's fiscal year ending May 31, 1953, sales in California amounted to $3,216.68 or 1.051 per cent of petitioner's total sales. For its fiscal year ending May 31, 1955, sales in California amounted to $2,975.85 or .924 per cent of its total sales. Petitioner has not maintained an office, warehouse or stock of material in California. All persons in California who handle petitioner's products are independent. Plaugher was engaged in selling oil field supplies and he sells the products of many concerns. His total commissions in 1953 from such concerns amounted to $38,000, and less than $600 of that amount was received from petitioner. Plaugher's business card has the name of his "concern" and its address on one side of the card, and on the other side of it there are the names of petitioner and 10 other concerns whose products he sells. The belt which allegedly caused the accident was sold by "C. T. Lewis" on April 8, 1952, to the Bethlehem Supply Company, which company sold the belt on June 13, 1952, to Kee and Simpson Drilling Company, the employer of decedent. Such sale occurred about two months before petitioner, the partnership, was formed. Petitioner has not obligated itself to be responsible for any of the debts or liabilities of C. T. Lewis. After the first motion to quash service of summons was sustained (on stipulation), the cause proceeded to trial against North & Judd. A verdict for plaintiff was returned, and a motion for a new trial was granted. On October 14, 1955, the superior court denied petitioner's motion

(second motion) to vacate the service of summons. Said court has no jurisdiction over petitioner for the reason that petitioner was not doing business in California, "did not come into existence or transact business anywhere prior to June 1, 1952 and after the alleged defective belt was sold and is not subject to constructive service."

The answer to the petition, by the real parties in interest (plaintiffs in the action for damages), alleges that "petitioner co-partnership" was not created on June 1, 1952 but was created, at least as to Charles T. and Maurine Lewis, in 1949, and that said persons have been copartners doing business under the name of Lewis Manufacturing Company from 1949 to the present time. Petitioner, as a copartnership, was doing business in California within the meaning of section 15700 of the Corporations Code since 1949. The order granting the first motion to quash service of summons, referred to in the petition herein, was granted upon stipulation of the parties. Ed W. Plaugher, doing business under the name of Ed W. Plaugher and Associates, has been the authorized representative of petitioner in California for at least the past five years. As such representative he has solicited supply houses to purchase petitioner's products and has carried on a continuous program of solicitations and sales talks in California on behalf of petitioner. He has listed himself on his business card as a manufacturer's representative for several firms, one of which is petitioner. He has occasionally received orders from buyers of petitioner's products and he has forwarded the orders to petitioner for direct delivery to the buyer. He is not a jobber as alleged in the petition, and he does not buy direct from petitioner for resale to his own customers. He has kept on hand, in California, a small supply of petitioner's products which are treated by him as a consignment belonging to petitioner. He keeps said supply on hand for delivery to California purchasers in case of emergency. He, on behalf of petitioner, has taken dimensions for canvas engine houses, sold by petitioner, when the same have been ordered by California purchasers, and he has forwarded the orders to petitioner for delivery to the purchasers. After such delivery Plaugher supervises the erection of said houses. In return for his services on behalf of petitioner, he has received a commission of 10 per cent on all sales of petitioner's products in California. For the year 1953 petitioner's receipts from the sale of its products in California amounted to approximately $6,000.

The belt, referred to in the petition herein, was not sold by C. T. Lewis but was sold by petitioner. Petitioner was doing business in California and was existing as a copartnership at the time of the accrual of the cause of action involved in this proceeding and up to the present time. Petitioner has continuously done business in California within the meaning of section 15700 of the Corporations Code from 1949 to the present time. The belt was sold by petitioner, a copartnership, at the time it was doing business in California.

Petitioner contends that the "first summons having been quashed," and the real parties in interest (plaintiffs in the damage action) having been given the privilege of issuing process at a subsequent date, they (plaintiffs) were required to have another summons issued within a year from date of that order. It was the "service" of the summons (not the summons) that was quashed on July 28, 1954, in the first proceeding to quash service of summons. It was more than a year thereafter that the alleged second service was made, namely, August 8, 1955. The summons (original) was not filed until after the alleged second service. The summons was issued on May 19, 1954, and it was filed September 27, 1955.

■ It is true that said order of July 28, 1954, stated that the motion to quash service of summons was sustained subject to the right of plaintiffs "to issue process at a subsequent date." The recitals therein, preceding the order, contained the words: "The plaintiffs announced that they did not have at this time sufficient proof to show that the defendant . . . was . . . doing business in . . . California, and are willing that the motion be sustained upon the understanding that the plaintiffs have the right *to issue or attempt service* . . . at a later date. . . ." (Italics added.) That recital, when considered with the circumstance that it was a stipulation to quash service of summons, indicates that said portion of the order was intended to mean that the order was subject to plaintiffs' right "to serve process." Of course, plaintiffs could not issue process. Plaintiffs were not required to have another summons issued.

Petitioner contends that its business activities in California did not "rise to the level" of doing business in California within the meaning of section 15700 of the Corporations Code.[1]

[1]Corp. Code, § 15700. "Every partnership, other than a commercial or banking partnership established and transacting business in a place without the United States, which is domiciled without this State and has no regular place of business within this State, shall, within forty days

Whether petitioner was doing business in California so as to be amenable to California process is primarily a factual determination. (See *Estwing Mfg. Co.* v. *Superior Court,* 128 Cal.App.2d 259, 261 [275 P.2d 146].) An extended discussion with reference to the meaning of the expression "doing business in this state," as applied to a foreign corporation, is in *Kneeland* v. *Ethicon Suture Laboratories,* 118 Cal.App.2d 211 [257 P.2d 727]. In *West Publishing Co.* v. *Superior Court,* 20 Cal.2d 720 [128 P.2d 777], it was said at page 727, in quoting from other cases: " 'A foreign corporation is amenable to process . . . if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there.' " " 'If in fact . . . it [the corporation] is here, . . . not occasionally or casually, but with a fair measure of permanence and continuity, then, whether its business is interstate or local, it is within the jurisdiction of our courts.' " " 'But there is no precise test of the nature or extent of the business that must be done. All that is requisite is that enough be done to enable us to say that the corporation is here.' " In *Fielding* v. *Superior Court,* 111 Cal.App.2d 490 [244 P.2d 968], it was said at page 494: "The essence of doing business is that the corporation is present within the state sufficiently to constitute it just and equitable that it be amenable to process within the state." In *Sales Affiliates, Inc.* v. *Superior Court,* 96 Cal.App.2d 134 [214 P.2d 541], it was said at page 136: "If the representation which petitioner maintained in the state gave it in a practical sense, and to

from the time it commences to do business in this State, file in the office of the Secretary of State a designation of some person residing within the State upon whom process issued by authority of or under any law of this State may be served. A copy of such designation, duly certified by the Secretary of State, is sufficient evidence of such appointment.

"Such process may be served on the person so designated, or, in the event that no such person is designated, then on the Secretary of State or a deputy secretary of state, together with a statement of the last-known address of the partnership, if known, or if no address of the partnership is known, a statement that the address of the partnership is unknown. If the address of the partnership is known, the Secretary of State shall immediately give notice of such service upon him or upon his deputy to the partnership by telegraph, and forward a copy of the process to it by registered mail, at the address given in the statement.

"Service on the person designated or service on the Secretary of State or on a deputy secretary of state and notice of service by telegraph and forwarding a copy of the process by registered mail pursuant to this section is a valid service on the partnership. Where the address of the partnership is in fact unknown to the person seeking to serve the process, service on the partnership is complete when the process is served upon the Secretary of State."

a substantial degree, the benefits and advantages it would have enjoyed by operating through its own office or paid sales force, it was clearly doing business in the state so as to be amenable to civil process."

In the affidavit of C. T. Lewis, filed in support of the motion to quash service of summons, it is stated: that for approximately 18 years he has been in the business of selling oil field supplies and equipment; he has traded under the name of Lewis Manufacturing Company since he started in business; said company's office and warehouse are located in Oklahoma and it has no other office or warehouse; its sales are limited to wholesale and retail dealers; most of its sales in California are handled by Edward W. Plaugher; he (C. T. Lewis) started dealing with Plaugher about 1949; he and Plaugher made an informal oral arrangement whereby Lewis was to pay Plaugher a commission on sales in California of Lewis' products; all orders of the products are subject to acceptance by the company in Oklahoma; Plaugher is and has been at all times an independent contractor; Lewis Manufacturing Company and Lewis have no control over Plaugher's business activities and no financial interest in his business; there was nothing in their agreement to prevent Plaugher from dealing with any other manufacturer even if the products were in competition with Lewis Manufacturing Company; Plaugher does not carry a full supply of the products of Lewis Manufacturing Company; he keeps only a few pieces to fill emergency orders and use as samples, and the value of said stock is less than $20; Lewis Manufacturing Company does not maintain any stock of materials in California; it has never had a salesman residing or employed in California; it has never done any manufacturing, selling or purchasing in California; it has never had a bank account, a mailing address, or telephone or directory listing, in California; it owns no property, has never rented property and pays no taxes in California; it has done no advertising in California and does not attempt to solicit business therein other than to mail its catalogue and price lists to firms who have purchased its products; the total volume of its sales in California is less than one per cent of its total sales; during the fiscal year ending May 31, 1954, its total sales in California amounted to $3,216.68, or 1.051 per cent of its total sales; during the fiscal year ending May 31, 1955, its total sales in California amounted to $2,975.85, or 0.924 per cent of its total sales; and

its total sales in California for June, July and August, 1955, amounted to $768.10, or 0.876 per cent of its total sales.

The deposition of Ed W. Plaugher, filed in the superior court in opposition to the motion to quash service of summons, states that Plaugher's first discussion regarding the products of the Lewis Manufacturing Company was in 1948 or 1949 with E. L. Oliver, who was a salesman for that company; Oliver asked Plaugher if he would like to look after the belts in California and see if he could get certain companies interested; after that conversation Plaugher began calling on oil equipment supply houses in California; Plaugher first met C. T. Lewis in 1948 or 1949 and at that time Plaugher was already solicting business for him in California; they entered into an oral arrangement whereby Plaugher was to receive a commission of 10 per cent on the gross sales of any goods which Lewis sold and shipped into California, regardless of whether Plaugher got the account or whether it was an account that Lewis had prior to the time Plaugher tried to sell the goods; in accordance with that agreement Plaugher has continued to solicit business for the Lewis Manufacturing Company; after Plaugher began to solicit business in California for the Lewis Company, Lewis sent him commissions on anything that was sold and shipped into California, regardless of whether the order came directly from Plaugher or was a direct order from a supply house in California to Lewis in Oklahoma; that arrangement has continued from 1948 or 1949 to the present time; in 1953 he received $600 as commissions; in 1954 he received $71.45 as commissions; in 1955 (from April to time of taking deposition in September) he received $260; on occasions he received orders for the Lewis Company products from supply houses, and he forwarded them to the company; he never collected any money due to the company; all the billing is done by the company; his activities on behalf of Lewis have been to solicit orders and stimulate business in California; he would call on supply companies and ask them to put in the Lewis line of belts or other products; and he would explain the features of the belt; he (Plaugher) has three employees in his organization; he and his employees have solicited and obtained orders for canvas engine houses that Lewis manufactures; in taking the orders for the engine houses, he made the measurements and sent them with the order, and after the houses had been shipped here he would see that they were erected properly;

Lewis catalogues and discount sheets are mailed directly from Oklahoma to the supply companies, but he (Plaugher) has a few for emergencies; he has a very small stock of belts in his office, which stock is for an emergency; he did not pay for the belts but he treated them as a consignment belonging to Lewis Manufacturing Company; Lewis did not pay him a salary or any part of his expenses; and Plaugher does not make sales reports to Lewis.

■ The evidence shows that the representative of the Lewis Manufacturing Company, by agreement with the company, solicited, stimulated and obtained business in California for the company; that the company obtained a substantial amount of business through such representative; that the representation was not carried on occasionally or casually but was carried on with "permanence and continuity"; that the representative had some responsibility for the conduct of local transactions of the company, namely, fitting the canvas engine houses over engines; and that the agent was paid substantial commissions for his services. Under the evidence herein the business activities of petitioner in California constituted doing business in this state within the meaning of section 15700 of the Corporations Code. As stated in *Kneeland* v. *Ethicon Suture Laboratories, supra,* 118 Cal. App.2d 211, 228 [257 P.2d 727], the activities constituted doing business in this state, "to the extent that assumption of jurisdiction over it is consistent with due process; and that there is afforded to both parties a greater amount of justice by allowing suit in this state rather than requiring it elsewhere."

Petitioner contends that, in order to secure service on a foreign partnership under the provisions of said section 15700, the cause of action must arise out of business done in this state; and that the claim, in the action referred to herein, is not connected with any business the petitioner did here. Petitioner argues that the burden is upon the plaintiffs in said action to show that petitioner was doing business in California, and that the cause of action arose out of the business petitioner was doing in California. This contention pertains to an issue which may arise if and when petitioner answers the complaint. The issues presented upon petitioner's motion to quash service of summons do not require a determination of the merits of the action on the subject of negligence. The evidence upon the motion to quash service was sufficient to warrant the trial court in finding, prelimi-

narily for the purposes of the motion, that the belt which allegedly caused the accident was sold in California while petitioner was doing business in California.

Petitioner contends further that if section 15700 of the Corporations Code is construed to authorize service on a partnership domiciled outside the state the section is unconstitutional. It argues that a foreign partnership has the right to do business in this state or any state and that such partnership, unlike a corporation, is not required to obtain the consent of a state to do business therein; that since a state cannot prohibit a foreign partnership from doing business in that state, it cannot make the foreign partnership subject to civil process in that state (in which the partnership is not domiciled). Petitioner relies upon *Flexner* v. *Farson* (1919), 248 U.S. 289 [39 S.Ct. 97, 63 L.Ed. 250], and asserts that said case settles the question and holds that a foreign partnership is not subject to civil process in a state in which the partnership is not domiciled. That case, which is factually distinguishable from the present one, is not to be regarded as holding that a foreign partnership is not subject to civil process in a state in which it is not domiciled. In that case an action was brought in Illinois upon a judgment which had been rendered in Kentucky. The Illinois complaint alleged: that the transaction which was the basis for the Kentucky judgment took place in Kentucky where the defendants were doing business as partners through W. Flexner who was their agent; that the defendants were nonresidents of Kentucky and that service of summons in the Kentucky action was made upon W. Flexner, in accordance with a Kentucky statute authorizing service to be made in that way. In the Illinois action, the answer alleged: that the defendants named in the Kentucky action did not reside in Kentucky, were not served with process, and did not appear; that W. Flexner (upon whom summons was served in Kentucky) was not the agent of defendants at the time of service of summons upon him; that the Kentucky statute was unconstitutional; the Kentucky court had no jurisdiction and its judgment was void. In the Illinois action, the plaintiff demurred to the answer. After the demurrer was overruled, the plaintiff stood upon the demurrer, and judgment was entered for defendants. The Supreme Court of Illinois affirmed the judgment. In the United States Supreme Court, upon review of the Illinois judgment, it was argued that the answer (in

the Illinois action) tacitly admitted that W. Flexner was agent (in Kentucky) of the partners and that under the Kentucky statute he was agent of the partners to receive service in actions arising out of business done in Kentucky; that the defendants (partners) by doing business in Kentucky consented to be bound by service under the Kentucky statute. The United States Supreme Court said therein at page 293: "The analogy of suits against insurance companies based upon such service is invoked. [Citation.] But the consent that is said to be implied in such cases is a mere fiction, founded upon the accepted doctrine that the states could exclude foreign corporations altogether, and therefore could establish this obligation as a condition to letting them in. [Citations.] The state [Kentucky] had no power to exclude the defendants, and on that ground, without going farther, the supreme court of Illinois rightly held that the analogy failed, and that the Kentucky judgment was void. If the Kentucky statute purports to have the effect attributed to it, it cannot have that effect in the present case."

In an annotation in 94 Law. Edition it is said at page 1176: "Upon its face the decision in the Flexner Case (U.S.) *supra,* would seem to be conclusive against a state's power to authorize substituted service upon nonresident individuals, even though they do business within the state. However, there are various reasons supporting the belief that the decision can be given no such effect. The state statute involved failed to limit the actions in which process may be served to those arising out of transactions within the state. Moreover, it was admitted that the person served was not in fact the agent of the partnership. Finally, the decision is inconsistent with the basic legal theories expressed in more recent decisions of the Supreme Court. Thus, in International Shoe Co. v. Washington (1945) 326 U.S. 310, 90 L.ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057, the court stated that 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contracts [contacts] with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' While the proposition so stated is, as regards jurisdiction over individuals, only a dictum, it has been pointed out that there seems no reason that a continuous course of business conducted by the agents of a nonresident individual should not be considered the equivalent of such 'minimum contacts.' It has

also been pointed out that the Flexner Case, in which an opposite view was taken on the ground that a state can exclude a foreign corporation, but cannot exclude individuals from doing business within its borders, can no longer be an authority on that question, because this case rests on the doctrine of 'implied consent' and this doctrine has been expressly discarded in the International Shoe Company Case.

"In accord with the more recent view is Henry L. Doherty & Co. v. Goodman (1935) 294 U.S. 623, 79 L.ed. 1097, 55 S.Ct. 553, involving an action for damages based upon an alleged illegal sale of securities, where it was held that the constitutional rights of a nonresident defendant, who had a local office in the state for the sale of such securities—a business subjected in the state to special regulation—were not violated by service of process, under a state statute permitting such service, on an agent or clerk employed in his office. The case of Flexner v. Farson (1919) 248 U.S. 289, 63 L.ed. 250, 39 S.Ct. 97, *supra*, was distinguished on the ground that in the latter case the service was made upon one not then an agent for the defendant."

In *Davidson* v. *Henry L. Doherty & Co.*, 214 Iowa 739 [241 N.W. 700, 91 A.L.R. 1308], in distinguishing the Flexner case, it was said (pp. 747 and 748): "It is important that we consider the facts in that case. . . . It was sought [therein] to obtain judgment against the *individual partners* who were non-residents of the state, by service upon a purported agent of said *partnership*. It also appeared that the only person so served was *not* the agent of the partnership *at the time of service*." The defendant, in the Davidson case, was a resident of New York and conducted business therein as an individual under a trade name. He also had an office in Iowa (for the sale of shares of stock). Service of process was made upon defendant's agent in Iowa pursuant to a statute of that state which provided that when a corporation, company or individual has an office for the transaction of business in any county other than that in which the principal resides, service may be made on any agent or clerk employed in said office in actions growing out of or connected with business of that office. It was held therein that such statute was applicable to individual nonresidents and that it was constitutional.

The case of *Henry L. Doherty & Co.* v. *Goodman, supra,* was referred to in 23 California Law Review 482 in an article by

Professor McBaine on the subject of "Service Upon a Non-Resident." On page 484 it was said: "Can he [Doherty, a resident of New York] by virtue of the statute [of Iowa] be commanded to appear in an Iowa court, when he has done business in that state, in a suit arising out of such business when the summons is served upon his agent? Is such service due process of law? Is it within the competence of the Iowa court? *Flexner* v. *Farson* was distinguished. The Supreme Court of the United States, in making affirmative answers to these questions, employed the analogy of service authorized by statutes upon non-resident motorists." It was also said therein at page 485: "In view of recent decisions of the Supreme Court of the United States it is perhaps not saying too much to assert that the state has the power to some extent to regulate any business transacted within its borders. [*Nebbia* v. *People of the State of New York* (1934), 291 U. S. 502 (54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469).] The opinion in the principal case [Henry L. Doherty & Co. v. Goodman] makes no express choice of the police power theory; consent theory; or imposition of reasonable conditions theory. Seemingly it implied approves the view that a state, constitutionally, may forbid a natural person to do certain acts within its borders and, in the absence of actual consent to the jurisdiction of its courts of actions arising out of such business, may provide that process may be served upon his agent."

In Restatement of the Law of Judgments it is said at page 114, section 24: "A court in a State in which a partnership or other unincorporated association is subject to be sued in the firm or common name acquires by proper service of process jurisdiction over it as to causes of action arising out of business done by the association in the State." It was also said therein at page 115: "Even though the partnership or association does business within the State, the courts of the State acquire jurisdiction over it only as to causes of action arising out of the business done in the State. . . . A court cannot exercise jurisdiction over a partnership or association unless there is such service of process as is reasonably calculated to give it notice of the action and an opportunity to be heard. . . . Service upon one of the partners or upon an agent in charge of the business is sufficient. . . . A judgment rendered against a partnership . . . in accordance with the rule stated in this Section is a binding adjudication as to the liability of the partnership or association with respect to its

assets in other States as well as to its assets in the State in which it is rendered.''

■ Section 388 of the Code of Civil Procedure provides: ''When two or more persons, associated in any business, transact such business under a common name . . . the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates, and the individual property of the party or parties served with process, in the same manner as if all had been named defendants and had been sued upon their joint liability.'' It thus appears that in California a partnership may be sued in the partnership or firm name and that judgment may be rendered against the partnership in the partnership name. ■ Section 15700 of the Corporations Code refers to service of process on the partnership only and does not contemplate service as a basis for personal liability of the partners.

It could be inferred from the deposition of Plaugher that, pursuant to safety regulations of the state of California, the safety belts of petitioner were approved by the state. He testified that ''for quite some period of time I did not solicit belts, safety belts for the simple reason that they were not at that time supposed to be State approved and no store would want to stock them.'' Safety belts used in California in connection with work on derricks must be of a type approved by the Division of Industrial Safety of California. (Cal. Admin. Code, § 6580, subd. (b), tit. 8.)

Section 15700 of the Corporations Code is based upon section 2472 of the Civil Code which was enacted in 1909. In other words, the substance of said section 15700 has been a statutory provision since 1909. Service of summons under the provisions of section 15700 of the Corporations Code did not deprive petitioner of due process of law. Petitioner was doing business in this state within the meaning of said section. The evidence was sufficient to warrant a preliminary finding, for the purposes of the motion, that the cause of action arose out of business done in this state. The portion of the business, pertaining to safety belts for use in California, was subject to regulation by California, in that, the approval of the belts by the state was required. Petitioner had ''contacts'' with this state to the extent that, as stated in *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [66 S.Ct.

154, 90 L.Ed. 95, 161 A.L.R. 1057], "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" █ Section 15700 of the Corporations Code is not unconstitutional.

The petition for a writ of prohibition is denied. The alternative writ of prohibition is discharged.

Shinn, P. J., and Vallée, J., concurred.