[L. A. No. 29362. In Bank. Feb. 19, 1969.]

INTERNATIONAL AERIAL TRAMWAY CORPORATION, Plaintiff and Appellant, v. KONRAD DOPPELMAYR & SOHN et al., Defendants and Respondents.

---

Nagle, Vale & McDowall and William D. McDowall for Plaintiff and Appellant.

Shacknove & Goldman, John J. Baer and Philip J. Shacknove for Defendant and Respondent.

TOBRINER, J.—Plaintiff, International Aerial Tramway Corporation, brought an action against Konrad Doppelmayr & Sohn (Konrad), an Austrian limited partnership, and Artur Doppelmayr (Artur) alleging that defendants had breached a contract with plaintiff under which plaintiff obtained the exclusive right to sell Doppelmayr ski lifts in most of North America. The trial court granted Konrad's motion to quash service of summons (Code Civ. Proc., § 416.1). The trial court sustained Artur's demurrer to the first amended complaint without leave to amend and dismissed the action as to Artur. (Code Civ. Proc., § 581, subd. 3.) Plaintiff has appealed from these orders.

On plaintiff's appeal from the order quashing service of process on Konrad we reverse; we hold that Konrad was doing business in California. On remand the trial court will resolve a conflict in affidavits as to whether plaintiff's service of process complied with Code of Civil Procedure section 410. On plaintiff's appeal from the order dismissing the action against Artur, we also reverse; we hold that the trial court properly sustained the demurrer but abused its discretion in not granting leave to amend.

## 1. *Konrad's motion to quash service*

Konrad moved to quash service on two grounds: (1) it was not doing business in California; (2) it was not served in the manner required by Code of Civil Procedure section 410. The trial court granted the motion on the first ground.[1]

The affidavits supporting and opposing Konrad's motion show the following facts: Konrad, an Austrian manufacturer of ski lifts, entered into negotiations with plaintiff, a Califor-

[1]The trial court cited *Jeter* v. *Austin Trailer Equipment Co.* (1953) 122 Cal.App.2d 376 [265 P.2d 130], as authority for its order. In *Jeter*, "[t]he single, disputed issue [was] whether Austin was 'doing business in this state' . . . ." (122 Cal.App.2d at p. 381.)

nia corporation with offices in San Francisco, which resulted in a 1957 contract under which plaintiff became Konrad's exclusive sales representative in most of North America; plaintiff sold 69 ski lifts to customers in the United States and Canada between 1956 and 1965 which it had purchased from Konrad; three of these lifts were sold for use in California. Konrad provided plaintiff with advertising material, and plaintiff used this material in soliciting sales in California. Plaintiff deposited $500,000 between 1956 and 1965 in a San Francisco bank account for Konrad's benefit. Konrad held a mortgage on California property as security for part of the purchase price of a ski lift operating in California. Konrad's representatives made several trips to California in connection with the performance of the contract.

As the affidavits do not conflict on the relevant facts we determine the question of jurisdiction as a matter of law. (*Cosper* v. *Smith & Wesson Arms Co.* (1959) 53 Cal.2d 77, 81-82 [346 P.2d 409]; *Long* v. *Mishicot Modern Dairy, Inc.* (1967) 252 Cal.App.2d 425, 427-428 [60 Cal.Rptr. 432]; *H. Liebes & Co.* v. *Erica Shoes, Inc.* (1965) 237 Cal.App.2d 25, 30-31 [46 Cal.Rptr. 470].)

The Legislature has provided that foreign partnerships doing business within this state under a common name are subject to the jurisdiction of our courts. (Code Civ. Proc., § 388; Code Civ. Proc., § 411; cf. Corp. Code, § 15700;[2]

---

[2]Code of Civil Procedure section 388, prior to its amendment in 1967, provided that "When two or more persons, associated in any business, transact such business under a common name, . . . the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates, and the individual property of the party or parties served with process . . . ."

Code of Civil Procedure section 411, prior to its amendment in 1967, provided that: "The summons must be served by delivering a copy thereof as follows: . . . 2. If the suit is against a foreign corporation, or a non-resident . . . association, doing business in this State; in the manner provided by Sections 6500 to 6504, inclusive, of the Corporations Code. . . ."

Corporations Code section 15700, prior to its amendment in 1967, provided that "Every partnership, other than a commercial or banking partnership established and transacting business in a place without the United States, which is domiciled without this State and has no regular place of business within this State" shall, prior to commencing to do business within the state, designate an agent for service of process. The section provided for substituted service upon the Secretary of State in the event that the partnership has not designated an agent.

Corporations Code section 15700, as it read in 1967, does not govern the instant case as Konrad is "a commercial . . . partnership established and transacting business in a place without the United States. . . ." The parties do not contest, however, that Code of Civil Procedure

*Lewis Mfg. Co.* v. *Superior Court* (1956) 140 Cal.App.2d 245, 250 [295 P.2d 145].) "Doing business in this state" "is a descriptive [term] that the courts have equated with such minimum contacts with the state 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' (*International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 [90 L.Ed. 95, 101, 66 S.Ct. 154. 161 A.L.R. 1057] [citations].)" (*Henry R. Jahn & Son* v. *Superior Court* (1958) 49 Cal.2d 855, 858 [323 P.2d 437].) ■ We explain why Konrad was doing business within this state.

Pursuant to contracts negotiated and executed in California, Konrad made regular sales to plaintiff a California corporation (see *Waco-Porter Corp.* v. *Superior Court* (1963) 211 Cal.App.2d 559, 566 [27 Cal.Rptr. 371]; cf. *Henry R. Jahn & Son* v. *Superior Court, supra.* 49 Cal.2d 855. 861) for resale within this state and other parts of this continent. Plaintiff, in soliciting California sales of the lifts manufactured by Konrad, used advertising materials furnished by Konrad. (See *Cosper* v. *Smith & Wesson Arms Co., supra,* 53 Cal.2d 77, 82.) In connection with its business Konrad maintained a bank account and held a mortgage on property within this state. In addition, this litigation concerns a contract entered into and performed in part in California. (See *Cosper* v. *Smith & Wesson Arms Co., supra,* 53 Cal.2d at p. 83; *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court* (1958) 51 Cal.2d 72, 79 [330 P.2d 789];[3] cf. *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 225-226 [1 Cal.Rptr. 1, 347 P.2d 1].)

■ Konrad also moved to quash service on the ground that it was not served in the manner required by Code of Civil Procedure section 410.[4] The parties do not dispute that

section 411 established the Legislature's intention to subject all nonresident unincorporated associations doing business within this state to the jurisdiction of our courts.

[3]In *Borgward* we stated: "It thus appears that Borgward is not merely a [German] manufacturer who sells its products in Germany knowing they will reach this state. It has actively undertaken to promote and protect its market in California by sending its agent to negotiate contracts here. It reaps the benefit of the local market and has access to our courts to enforce any rights growing out of its transactions here. Plaintiffs' alleged cause of action grew directly out of their relationship with Borgward's agent here . . . ."

[4]Section 410, prior to its amendment in 1967, provided in part: "When the service is against . . . . associates conducting business under a common name, in the manner authorized by Section 388, there shall appear on the copy of the summons that is served a notice stating in substance:

plaintiff served Artur as an individual by delivering to him personally a copy of the summons within this state.

In Artur's affidavit in support of the motion to quash he stated that he had been served personally in California in March 1966, both as an individual and as an agent for Konrad Doppelmayr & Sohn, *a corporation.*[5] He denied, however, that he was served on behalf of the partnership. According to affidavits filed in opposition to the motion to quash, Artur was also served on behalf of Konrad Doppelmayr & Sohn, a partnership. As the affidavits are in conflict on this point the trial court should resolve this conflict upon remand.[6]

## 2. *Artur's demurrer*

■ Artur interposed a general demurrer to the first amended complaint; he contended that it stated no cause of action against him individually. The complaint pleaded the making of a contract between "defendants" and plaintiff; plaintiff attached to and incorporated by reference in the complaint a copy of the contract. (See 2 Witkin, Cal. Procedure (1954) Pleading, § 252.) Under the 1957 contract Konrad granted to plaintiff the exclusive sales rights on most of the North American continent for Doppelmayr ski lifts; plaintiff promised to use its best efforts to promote the sale of those lifts and to place at least four orders a year with Kon-

---

'To the person served: You are hereby served in the within action . . . on behalf of (here state the . . . common name under which business is conducted by the associates) as a person upon whom the summons and a copy of the complaint must be served to effect service against said party under the provisions of (here state appropriate provisions of Section 388 or 411),' . . . .''

[5]No evidence showed that Konrad was a corporation; plaintiff has not challenged Konrad's status as a limited partnership.

[6]Konrad urges that we must sustain the trial court's order even if we conclude that the trial court erred in determining that Konrad was not doing business within this state: "The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is more firmly established . . . than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey* v. *Southern Pac. Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

We cannot sustain the trial court's order, however, by assuming that it in fact resolved the conflict in the affidavits by accepting Konrad's version. (See fn. 1, *supra.*) As stated in *Zak* v. *State Farm etc. Ins. Co.* (1965) 232 Cal.App. 2d 500, 506 [42 Cal.Rptr. 908]: "Where the record reflects that the trier of fact has not considered a theory under which the evidence is conflicting, the reviewing court cannot rely on that theory to sustain the action of the lower court."

rad. Plaintiff sufficiently alleged its own performance of the contract (Code Civ. Proc., § 457[7]) and alleged that "defendants" had breached the contract by sending a letter in February 1966 purporting to cancel the contract and that plaintiff had sustained damages as a result of such breach. Plaintiff also alleged that "defendants" had breached the contract in other respects.

Artur correctly points out that the complaint does not show in what manner he can be held liable on the contract as an individual. He did not sign the 1957 contract, and plaintiff set forth no allegation that Artur was an undisclosed principal. The complaint merely alleges that Artur was a "partner and/ or general manager" of Konrad but does not allege that Konrad was a limited partnership and that Artur was a general partner.

From its points and authorities filed in oppsition to the demurrer and its briefs on appeal, we gather that plaintiff intends to hold Artur individually liable as a general partner for the partnership's breach of contract. (See Code Civ. Proc., § 388; cf. *Fazzi* v. *Peters* (1968) 68 Cal.2d 590 [68 Cal. Rptr. 170, 440 P.2d 242].) Although we have noted the insufficiency of the allegations of the complaint, Artur's affidavit filed in support of Konrad's motion to quash service alleges that Artur is a general partner of Konrad, a limited partnership. Plaintiff can readily amend the complaint to correct this technical defect as to Artur's status; thus if the complaint states a cause of action against Konrad, the partnership, the trial court abused its discretion in denying leave to amend (see Code Civ. Proc., § 473; *Lamoreux* v. *San Diego etc. Ry. Co.* (1957) 48 Cal.2d 617, 623 [311 P.2d 1]).

Plaintiff alleged that Konrad had breached the contract by terminating palintiff's exclusive sales rights as of the date of the letter of cancellation. Artur contends that the letter did not constitute a breach of contract because Konrad was not bound to perform further on the contract; he reasons that the contract itself contained no provision as to the duration of the relationship, and thus the partnership could terminate the contract at any time.

A recent opinion of this court contains a thorough and definitive discussion of contracts that provide for continuing

[7]That section provides: "In pleading the performance of conditions precedent in a contract, it is not necessary to state the facts showing such performance, but it may be stated generally that the party duly performed all the conditions on his part . . . ."

performance but fail to fix a definite term of duration. In *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union No. 16* (1968) 69 Cal.2d 713 [73 Cal.Rptr. 213, 447 P.2d 325], we explained that "such omission [of a fixed term] does require that the duration of the contract be judicially determined in accordance with established rules of construction." (69 Cal.2d at p. 724.)

We pointed out that "While the initial effort of the court, in construing contracts of continuing performance or forbearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties, in some cases the nature of the contract and the totality of surrounding circumstances give no suggestion as to any ascertainable term. In such cases the law usually implies that the term of duration shall be at least [a] reasonable time, and that the obligations under the contract shall be terminable at will by any party *upon reasonable notice* after such a reasonable time has elapsed. [Citations.] *This rule is generally applicable, for instance, to exclusive sales agency and distributorship contracts.*" (Italics added; footnotes omitted.) (69 Cal.2d at pp. 727-728.)

We cannot determine from the instant contract that the parties intended the relationship to continue during a particular interval, and nothing in the complaint suggests that the contract has lapsed by reason of external circumstances.[8] Accordingly the contract was terminable by either party after a reasonable time and upon reasonable notice. We express no opinion as to whether the nine years of the contract constituted a reasonable time in view of all the circumstances, but plaintiff has sufficiently alleged that Konrad has prematurely repudiated the contract by refusing to continue to deal with plaintiff without giving *prior* notice. Plaintiff could therefore elect to treat Konrad's letter of cancellation as an anticipatory breach of contract. (See *Atkinson* v. *District Bond Co.* (1935) 5 Cal.App.2d 738, 743 [43 P.2d 867]; 12 Cal.Jur.2d, Contracts, §§ 245-247.) The question of the amount of damage, if any, that plaintiff suffered from the loss of profits because of the alleged breach must be resolved at trial. (See *Long Beach Drug Co.* v. *United Drug Co.* (1939) 13 Cal.2d 158, 173 [88 P.2d 698. 89 P.2d 386].)

[8] If, for instance, skiing was no longer a popular sport or ski lifts had become technologically obsolescent, we might determine that the contract had lapsed when those events occurred. (See *Town of Readsboro* v. *Hoosac Tunnel & W.R. Co.* (2d Cir. 1925) 6 F.2d 733, 735; *Consolidated Theatres, Inc., supra,* 69 Cal.2d at pp. 729-730.)

Having thus concluded that plaintiff should be permitted to amend its complaint to state a cause of action against Artur, and that the trial court abused its discretion in sustaining the general demurrer without leave to amend, we consider the effect of this conclusion upon the trial court's disposition of Artur's special demurrers. The trial court sustained the demurrers as against the entire complaint "on all grounds stated." Artur stated several objections to the complaint which were in the nature of special demurrers alleging uncertainty, ambiguity, and unintelligibility.[9] In denying plaintiff leave to amend, the court precluded not only correction of the complaint to withstand a general demurrer, but also correction which would allow the complaint to withstand the special demurrers.

We have determined that this denial of leave to amend constituted an abuse of discretion with respect to the general demurrer, and we assume that plaintiff will be able and willing to amend its complaint so as to withstand the general demurrer. Under these circumstances the rule in *Wennerholm* v. *Stanford University School of Medicine* (1942) 20 Cal.2d 713, 718-719 [128 P.2d 522, 141 A.L.R. 1358] applies: "Where a complaint is sufficient against a general demurrer, however, and any uncertainties or ambiguities in the pleading can be corrected by amendment, it is apparent that denial of leave to amend results in a disposition of the cause upon technical grounds alone. . . . It has been held, under such circumstances, that denial of leave to amend constitutes an abuse of discretion even though it be conceded that the trial court had authority to sustain the special demurrer because of defects in the form of the pleading."

The order granting Konrad's motion to quash is reversed; upon remand the trial court is directed to resolve the conflict in the affidavits as to whether Artur was served on behalf of the partnership. The judgment of dismissal as to Artur is reversed; the cause is remanded to the trial court with instructions to grant plaintiff a reasonable time within which to file an amended complaint.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[9]We have considered above the issues raised by the general demurrer which were also the subject of the special demurrers. The other points raised by the special demurrers related to various other breaches of the contract alleged by plaintiff.