SIERRA WINE AND LIQUOR
CO., Appellant,

v.

HEUBLEIN, INC., a corporation and
United Vintners, Inc., a
corporation, Appellees.

No. 78–2675.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1980.

Decided Aug. 22, 1980.

J. Albert Hutchinson, Hutchinson & Quattrin, San Francisco, Cal., for appellant.

James E. Topinka, San Francisco, Cal., argued, for appellees; Robert L. Maines, Pettit, Evers & Martin, San Francisco, Cal., on brief.

Before CHOY, GOODWIN and FARRIS, Circuit Judges.

PER CURIAM.

Sierra Wine and Liquor Co. appeals from the district court's judgments on various claims arising from the termination of Sierra's wine distributorship agreement with United Vintners, Inc. manufacturers of Italian Swiss Colony and other wines. We affirm.

In March 1965, Pierino Barengo, Sierra's president, and Jack McGrath, a United representative, orally agreed that Sierra would become the exclusive distributor of Italian Swiss Colony and Petri wines in northwestern Nevada. The oral agreement provided that United would supply Sierra with wine and that Sierra would use its best efforts to promote United's products. Neither the agreement's duration nor the conditions under which it could be terminated were specified.

From 1965 to August 1971, Sierra marketed and promoted United Vintners' products. In August 1968, Heublein, Inc., a Connecticut corporation, acquired control of United's parent corporation, Allied Grape Growers. On August 10, 1971, United informed Sierra that it was terminating the distributorship arrangement, effective in thirty days. United subsequently replaced Sierra with Wynn Distributing Co., an independent distributor affiliated with neither Heublein nor United. In October 1971, Sierra acquired a franchise for the distribution of Franzia Brothers Wines.

Sierra then filed this action, alleging that United had breached the distributorship agreement by terminating the arrangement without cause, that Heublein had tortiously interfered with the Sierra-United contract, and that Heublein, United, and unnamed parties (presumably including Wynn Distributing) had conspired and acted to deprive Sierra of its franchise in violation of Sections 1 and 2 of the Sherman Antitrust

Act (15 U.S.C. §§ 1, 2) and Section 7 of the Clayton Act (15 U.S.C. § 18). The district court granted defendants' summary judgment motion on the tort and antitrust claims, finding that undisputed evidence showed that United had acted unilaterally in terminating Sierra's distributorship, and not in combination with Heublein or with any other party.

The district court denied summary judgment on the breach of contract claim. After trial on that claim, the court found that, upon giving reasonable notice, either party could terminate the oral distributorship agreement at will. The court further found that United's thirty-day notice was unreasonable, that a reasonable notice period would have been six months, and that Sierra was, therefore, entitled to any actual damages resulting from loss of the distributorship for the six months following August 1971. Determining that Sierra's acquisition of the Franzia Brothers franchise mitigated the damages, the district court awarded Sierra damages of $5,000.

On appeal, Sierra raises three principal arguments. First, it contends the district court erred in finding that the Sierra-United distribution agreement was terminable at will, rather than for cause. Second, it claims the court incorrectly measured the damages from breach of the distribution agreement. Finally, Sierra challenges the court's entry of summary judgment for defendants on the tort and antitrust claims.

■ Sierra's first contention is not well taken. Sierra alleged that the parties agreed that the distributorship agreement was to continue "as long as [Sierra] performed its undertakings thereunder" and that the agreement was not to be terminated without good cause. But Sierra produced no evidence to support these allegations.

Indeed, Mr. Barengo, Sierra's president, testified that the parties did not discuss the agreement's duration:

"There was no term or days discussed. We just anticipated as any other—taking on any other line that we would do a good job."

Moreover, United introduced a letter confirming this understanding of the agreement. In 1968, shortly after Heublein gained control of United, Mr. Barengo wrote United, expressing concern about the future of the distributorship. United replied as follows:

"As you are aware, United Vintners has always followed a policy with regard to our brands that allows United Vintners upon proper notice to its wholesalers to change its distributors in any market whatsoever. You will know that we have applied this policy with great fairness and due consideration."

Sierra did not respond to this letter.

The district court held that, in these circumstances, the agreement was terminable at will upon reasonable notice by either of the parties. The court found no controlling Nevada precedent in 1965, but held that when the parties contracted, Nevada courts would have followed the rule adopted by most jurisdictions that a contract which includes no express term is terminable at will after a reasonable period, upon reasonable notice. See Annot., 19 A.L.R.3d 196 (1968) ("Termination by Principal of Distributorship Contract Containing No Express Provision for Termination"). See, e. g., *Alpha Distrib. Co. of Cal., Inc. v. Jack Daniel Distillery*, 454 F.2d 442, 448 (9th Cir. 1972), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974); *Internat'l Aerial Tramway Corp. v. Konrad Doppelmayr & Sohn*, 70 Cal.2d 400, 74 Cal.Rptr. 908, 450 P.2d 284 (1969). This court accepts a local district judge's view of the law of the state in which he or she sits unless it is "clearly wrong." *C. R. Fedrick, Inc. v. Borg-Warner Corp.*, 552 F.2d 852, 856 (9th Cir. 1977).

Sierra's arguments that the trial court's adoption of the majority rule was "clearly wrong" are unpersuasive. Sierra's reliance on *Burgermeister Brewing Corp. v. Bowman*, 227 Cal.App.2d 274, 38 Cal.Rptr. 597 (1964), is misplaced. There, the parties had agreed that the distributorship would continue as long as the wholesaler used his best efforts to promote the brewer's products. The court there found that the distributor-

ship was terminable only for cause. In this case, however, there was no expressly agreed upon term. The distinction is crucial. *See Alpha Distrib. Co. of Cal., Inc.,* 454 F.2d at 448. Sierra also attempts to invoke Nev.Rev.Stat. § 598.330(2), which provides that, regardless of the terms of a liquor franchise agreement, a distributorship cannot be terminated without good cause.[1] This provision, however, was enacted in 1973, eight years after Sierra and United contracted, and nothing indicates that the statute was a codification of Nevada common law.

■ Sierra next argues that even if the distributorship was terminable at will, the district court improperly limited damages flowing from United's failure to give reasonable notice of termination. Sierra apparently maintains that United's failure to give reasonable notice constituted an anticipatory breach, entitling Sierra to lost profits for some unspecified term.

This position is untenable. The district court, by awarding Sierra six months' lost profits, made Sierra whole. The court placed Sierra in the same position it would have been but for United's failure to give reasonable notice. This is the essence of modern damages theory.[2]

■ Sierra also contends that the district court improperly considered Sierra's profits from the Franzia Brothers' franchise as mitigating its damages. Sierra asserts that it would have acquired the Franzia distributorship even if its agreement with United had not been terminated. The district court, however, found that "one distributor in the normal course of business would not have a franchise for two major lines of wine products at the same time." Sierra offers no evidence showing this factual finding to be clearly erroneous. Fed.R. Civ.P. 52(a).

Sierra contends that the entry of summary judgment on its tort and antitrust claims was error. The gravamen of these claims was that Heublein induced United to terminate Sierra's distributorship and to transfer the franchise to Wynn Distributing with the intent, and effect, of restraining trade and monopolizing the market for California wines. Sierra asserts that material facts, defendants' intent and the effect of defendants' actions, were disputed, thereby precluding summary judgment.

■ Movants for summary judgment must demonstrate the absence of genuine issues of material fact. *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 438–39 (9th Cir. 1979). The use of summary judgment is particularly disfavored in antitrust litigation where determinations of motive, intent, and effect are crucial. *See Poller v. Columbia Broadcasting,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Beltz Travel Service v. Intern. Air Transport Ass'n,* 620 F.2d 1360, 1364–65 (1980). However, we agree with the district court that the exacting standards for summary judgment have been satisfied here. The antitrust defendants met their burden of showing the nonexistence of a genuine issue of material fact, and the district court could conclude, on the undisputed facts, that no antitrust violations had occurred. Even if intent and effect were disputed, summary judgment was appropriate because the evidence before the district court established that United acted unilaterally in terminating the distributorship arrangement.

Heublein could be liable for tortious interference only if it induced United to breach its contract with Sierra. Similarly, there can be no violation of Sherman § 1 without some sort of combination or conspiracy. The defendants introduced deposition testimony of United personnel tending

---

1. Nev.Rev.Stat. § 598.330(2) reads as follows:

    "Notwithstanding the terms, provisions or conditions of any franchise, no supplier shall unilaterally terminate or refuse to continue any franchise with a wholesale dealer or wholesaler or cause a wholesale dealer or wholesaler to resign from such franchise un-

less the supplier has first established good cause for such termination, noncontinuance or causing of such resignation."

2. *See* F. Kessler and G. Gilmore, *Contracts: Cases and Materials,* 1017–21, 1052–53 (2d ed. 1970).

to show that, following Heublein's acquisition of United, United continued to be solely responsible for the creation and termination of its distributors, United's decision to terminate Sierra's franchise was based on the recommendation of a United representative, and United consulted no Heublein officers or employees before terminating the distributorship. Sierra produced no evidence of a conspiracy. Indeed, both Sierra's president and vice president conceded in depositions that, to their knowledge, United had acted unilaterally.[3] Even viewing the evidence in the light most favorable to Sierra, *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674 (9th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976), the district court could properly conclude that Heublein had not conspired to deprive Sierra of its distributorship and that summary judgment on the tortious interference and restraint of trade claims was appropriate.[4]

Nor is United liable for violation of Sherman § 1. A manufacturer which switches distributorships violates antitrust laws only if "the refusal to deal, manifested by a combination or conspiracy, is so anticompetitive, in purpose or effect, or both, as to be an unreasonable restraint of trade." *Alpha Distrib. Co. of Cal., Inc.*, 454 F.2d at 452. *See Mutual Fund Investors v. Putnam Management Co.*, 553 F.2d 620 (9th Cir. 1977);

*Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71, 77–78 (9th Cir. 1969), *cert. denied*, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970). Again, "combination or conspiracy" is a necessary condition of liability, and the district court was correct in finding, on the facts before it, that there was neither.

■ For the same reasons, summary judgment on Sierra's Clayton § 7 claim was appropriate. To prevail on this claim Sierra was required to show that Heublein's acquisition of United substantially weakened competition, injuring Sierra. *See John Lenore & Co. v. Olympia Brewing Co.*, 550 F.2d 495, 498 (9th Cir. 1977). Here, the alleged causal link between Heublein's acquisition of United and Sierra's injury was that Heublein was responsible for the termination of Sierra's distributorship. The district court could find, on undisputed evidence, that the requisite causation was not established. *See In re Multidistrict Vehicle Air Pollution M. D. L. No. 31*, 481 F.2d 122 (9th Cir.), *cert. denied, sub nom. Morgan v. Automobile Manufacturers Ass'n, Inc., et al.*, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973).

■ Finally, entry of summary judgment on Sierra's Sherman § 2 claim was proper. Sierra's monopolization theory appeared to

---

3. Pierino Barengo, Sierra's president, testified as follows, in deposition:

"Q. Do you have any knowledge or information that the agreement of United Vintners to change distributors in the Reno area was anything other than the decision of United Vintners?

"A. No, I don't know of anything."

The deposition of Milton Gumbect, Sierra's vice president, includes the following exchange:

"Q. Do you have any knowledge or information that United Vintners' decision to terminate the Sierra distributorship was pursuant to any agreement or understanding or conspiracy with anybody other than United Vintners?

"A. I have no such knowledge."

4. This case is distinguishable from *Beltz Travel Service v. Intern. Air Transport Ass'n*, 620 F.2d 1360 (1980). There, the court held that, even when antitrust plaintiffs failed to present evidence supporting allegations of conspiracy, summary judgment for defendants was improper if the defendants did not offer evidence disproving alleged conspiracies.

Here, while Sierra offered no evidence of conspiracy in opposing summary judgment, the defendants presented evidence that United had acted alone in terminating Sierra's distributorship. Moreover, Sierra's officers denied knowledge of any facts justifying its conspiracy claims. In *Beltz*, there were no comparable admissions by plaintiff.

Significantly, the court in *Beltz* emphasized that plaintiff, in its opposition to summary judgment, sought further discovery. The court noted that "further discovery might be the only method by which the facts underlying the alleged agreement would be revealed." At 1366. In this case, Sierra did not seek additional discovery. Defendants' motion for summary judgment followed extensive discovery which afforded Sierra ample opportunity to develop the factual bases, if any, for its conspiracy allegations.

hinge on two allegations. First, that Heublein had attempted to monopolize the production of California wines. And second, that by terminating Sierra's franchise, United was attempting to aid Heublein's efforts to monopolize sales of domestic wines in Nevada, injuring Sierra. Deposition evidence disproved the Heublein-United combination leg of this analysis. Consequently, even if Heublein had monopolized, or attempted to monopolize, production of California wines, the pleadings do not demonstrate how Sierra was injured by those actions. Without such a showing, Sierra lacked standing to assert a Sherman § 2 claim, and the district court's entry of summary judgment was proper. *See Solinger v. A&M Records, Inc.*, 586 F.2d 1304, 1309–10 (9th Cir. 1978), *cert. denied sub nom. Motown Record Corp. v. Solinger*, 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979).

Affirmed.